

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR - 4 2005

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

PRECIS, INC., an Oklahoma        §
Corporation, and DAVID MAY,      §
                                 §
          Plaintiffs,            §
                                 §
v.                               §        Case No. 3:05-CV-00346
                                 §
FEDERAL INSURANCE COMPANY,       §
an Indiana stock insurance company, §
and ZURICH AMERICAN              §
INSURANCE COMPANY,               §
                                 §
          Defendants.            §

ORIGINAL

---

**APPENDIX TO**
**FEDERAL INSURANCE COMPANY'S RESPONSE TO**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Defendant Federal Insurance Company ("Federal"), and, pursuant to

Rules 7.1(i) and 56.6 of the Local Rules for the United States District Court for the Northern

District of Texas, files this Appendix to Federal Insurance Company's Response to Plaintiffs'

Motion for Summary Judgment and Cross-Motion for Summary Judgment, containing the

following items:

| Tab | Description |
|-----|-------------|
| 1 | Affidavit of J. Steve Bailey |
| 1-A | Precis's application for the Federal Policy |
| 1-B | Executive Protection Policy No. 8168-5014 issued by Federal to Precis |

Appendix to Federal Insurance Company's Response to Plaintiffs'
Motion for Summary Judgment and Cross-Motion for Summary Judgment        1
174991.1

| | |
|---|---|
| 1-C | December 2, 2002 correspondence from Eugene Michael Kennedy, Esq. to Precis |
| 1-D | December 9, 2002 correspondence from Robert T. Kirk to Precis |
| 1-E | September 16, 2003 correspondence from Karen Robb to Palmer & Cay |
| 1-F | Citation and Petition in Cause No. 236-201468-03, *Robert Kirk, Individually and d/b/a US Asian Advisors, LLC, Eugene M. Kennedy, P.A., Stewart & Associates, CPA's, P.A., and Kimberly DeCamp v. Precis, Inc. and David May*, in the 236th District Court of Tarrant County, Texas |
| 1-G | September 26, 2003 correspondence from Palmer & Cay to Chubb & Son |
| 1-H | April 22, 2004 correspondence from J. Steve Bailey to Karen Robb |
| 1-I | March 23, 2004 correspondence from Anastasia Markakis Nye to Karen Robb |
| 1-J | Petition filed in Cause No. CJ-2004-6150, *Precis, Inc., an Oklahoma corporation, and David May v. Federal Insurance Company, an Indiana stock insurance company, and Zurich American Insurance Company,* in the District Court of Oklahoma County, Oklahoma |
| 1-K | February 14, 2005 Order signed by United States District Judge Vicki Miles-LaGrange granting Federal's Amended Motion to Transfer Venue to the United States District Court for the Northern District of Texas |

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

By:_____

R. Douglas Noah, Jr.
Texas Bar No.: 15047500
Janet H. Tolbert
Texas Bar No.: 10300510
5000 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 698-8000 (telephone)
(214) 698-1101 (facsimile)

**ATTORNEYS FOR DEFENDANT
FEDERAL INSURANCE COMPANY**

Appendix to Federal Insurance Company's Response to Plaintiffs'
Motion for Summary Judgment and Cross-Motion for Summary Judgment                    2
174991.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record as indicated below on the ___4th___ day of March, 2005:

Reid E. Robinson
Drew D. Webb
McAfee & Taft, P.C.
10th Floor, Two Leadership Square
Oklahoma City, OK 73102
**Attorneys for Plaintiffs**

David V. Stewart
Crowe & Dunlevy
20 North Broadway
Suite 1800
Oklahoma City, OK 73102
**Attorneys for Defendant, Zurich**

Tory M. Bishop
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
**Attorneys for Defendant, Zurich**

_____
R. DOUGLAS NOAH, JR.

**Appendix to Federal Insurance Company's Response to Plaintiffs'**
**Motion for Summary Judgment and Cross-Motion for Summary Judgment**                    3
174991.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| PRECIS, INC., an Oklahoma<br>Corporation, and DAVID MAY,<br><br>      Plaintiffs,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br>an Indiana stock insurance company,<br>and ZURICH AMERICAN<br>INSURANCE COMPANY,<br><br>      Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:05-CV-00346 |

### AFFIDAVIT OF J. STEVE BAILEY

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Before me, the undersigned notary, on this day personally appeared J. Steve Bailey. After I administered an oath to him, upon his oath he said:

1.    My name is J. Steve Bailey. I am over the age of eighteen, have never been convicted of a crime involving moral turpitude, and am fully competent to make this Affidavit. I have personal knowledge of the facts set forth in this Affidavit, and they are true and correct.

2.    I am an Assistant Vice President for Chubb & Son, a division of Federal Insurance Company ("Federal"). Chubb & Son acts as claims manager for Federal with respect to the Underlying Lawsuit (described below) and the Federal Policy at issue in this action. I was the Chubb & Son claims examiner assigned to handle the Plaintiffs' request for coverage of the Underlying Lawsuit. As such, I have personal knowledge of the matters set forth in this Affidavit.

3.     This Affidavit is submitted in support of Federal's Response to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment and Brief in Support filed in the above styled and numbered action.

4.     Federal issued its Executive Protection Policy No. 8168-5014 to Precis, Inc. ("Precis") as the **"Insured Organization"**[1] for the Policy Period of September 1, 2002 to September 1, 2003 (the "Federal Policy").  The Federal Policy listed Precis's address as 2040 N. Highway 360, Grand Prairie, TX 75050.   The Federal Policy contained the Amendatory Endorsements required by Texas law.

5.     On August 29, 2003, a lawsuit was filed against Precis and its general counsel, David May ("May") (collectively, "Plaintiffs"), styled *Robert Kirk, Individually and d/b/a US Asian Advisors, LLC, Eugene M. Kennedy, P.A., Stewart & Associates, CPA's, P.A., and Kimberly DeCamp v. Precis, Inc. and David May*, Cause No. 236-201468-03, which is pending in the 236th District Court of Tarrant County, Texas (the "Underlying Lawsuit").

6.     On or about September 26, 2003, Precis's insurance broker, Palmer & Cay, forwarded a notice of the Underlying Lawsuit to Jim Danford at Chubb & Son's Dallas, Texas claims office, seeking coverage for the Underlying Lawsuit.

7.     I acted on behalf of Federal with respect to this request and handled Plaintiffs' request for coverage.

8.     Through my investigation on behalf of Federal, I learned of two demand letters that had been sent to Precis in December 2002.  Based on these letters and the applicable Policy language implicated thereby, Federal determined that these demand letters constituted **Claims** under the Federal Policy.  Following my investigation, on April 22, 2004, I issued, on behalf of

---

[1] The terms in bold are specifically defined in the Federal Policy attached as Exhibit 1-B hereto and it is intended that those definitions are applicable in this affidavit.

Federal, a letter to Precis denying coverage for the Underlying Lawsuit on the basis that the **Claims** were not reported to Federal as soon as practicable as required by the Federal Policy (the "denial letter").

9.       Attached hereto are true and correct copies of the following documents:

1-A      Precis's application for the Federal Policy

1-B      Executive Protection Policy No. 8168-5014 issued by Federal to Precis

1-C      December 2, 2002 correspondence from Eugene Michael Kennedy, Esq. to Precis

1-D      December 9, 2002 correspondence from Robert T. Kirk to Precis

1-E      September 16, 2003 correspondence from Karen Robb to Palmer & Cay

1-F      Citation and Petition in Cause No. 236-201468-03, *Robert Kirk, Individually and d/b/a US Asian Advisors, LLC, Eugene M. Kennedy, P.A., Stewart & Associates, CPA's, P.A., and Kimberly DeCamp v. Precis, Inc. and David May*, in the 236th District Court of Tarrant County, Texas

1-G      September 26, 2003 correspondence from Palmer & Cay to Chubb & Son

1-H      April 22, 2004 correspondence from J. Steve Bailey to Karen Robb

1-I      March 23, 2004 correspondence from Anastasia Markakis Nye to Karen Robb

1-J      Petition filed in Cause No. CJ-2004-6150, *Precis, Inc., an Oklahoma corporation, and David May v. Federal Insurance Company, an Indiana stock insurance company, and Zurich American Insurance Company*, Cause, in the District Court of Oklahoma County, Oklahoma

1-K      February 14, 2005 Order signed by United States District Judge Vicki Miles-LaGrange granting Federal's Amended Motion to Transfer Venue to the United States District Court for the Northern District of Texas

FURTHER AFFIANT SAYETH NOT.

J. STEVE BAILEY

Sworn to and subscribed before me by J. STEVE BAILEY on the 2ᵈ day of March, 2005.

Notary Public for the State of Texas

My Commission Expires: 05-23-07



BRENDA D TYER
Notary Public
State of Texas
My Commission Expires
May 23, 2007




**CHUBB**

Chubb Group of insurance Companies

15 Mountain View Road, Warren New Jersey 07059

**APPLICATION
EXECUTIVE LIABILITY** ᴬᵁᴳ 0 8 2002
**AND
INDEMNIFICATION**

## UNDERWRITTEN IN FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY OR TEXAS PACIFIC INDEMNITY COMPANY

Executive Liability and Indemnification Coverage is written on a claims-made basis. Except as otherwise provided, this section of the policy will cover only claims made against the insured during the Policy Period.  Please read the policy carefully.

Defense Cost Provision:

Please note that the Defense Cost provision of this policy stipulates that the Limits of Liability may be completely exhausted by the cost of legal defense. Any deductible may be similarly reduced or exhausted by Defense Costs.

1. **GENERAL INFORMATION**

   Parent Organization _*Axcis Inc.*_

   Address _*2040 N. Hwy 360, Grand Prairie, TX 75050- 1423*_

   State of Incorporation _*Oklahoma*_                    Date Established _*July 13, 1992*_

   Nature of Business _*Credit Insurance TPA*_

2. **MATERIAL CHANGE**

   Signing of this application does not bind the **Parent Organization** or the Company. If there is any material change in the answers to the questions prior to the policy inception date the **Parent Organization** will notify the Company in writing and any outstanding quotation may be modified or withdrawn.

3. **UNDERWRITING INFORMATION**

   As part of this application, please attach the following (where applicable):

   * Latest audited Annual Report.
   * Latest Form 10-K, 10-Q, 8-K, and 13d reports filed with the S.E C.
   * A copy of the indemnification provisions of the by-laws, charter or articles of incorporation.
   * Latest proxy statement.

4. **COVERAGE REQUESTED**

   | Coverage | Limit Requested |
   |---|---|
   | Executive Liability and Indemnification | $ _*10,000. 00*_ |

**Appendix  005**

5. **POLICY PERIOD REQUESTED**

From _08/1/02_ to _08/1/03_ both days at 12:01 a.m. at the principal address of the

6. **SUBSIDIARIES**

Do you want to include all subsidiaries? ____Yes __✓__ No. Attach a list of subsidiaries to be covered including the information: nature of business, % owned, date acquired or created.

7. **PARTNERSHIPS**

Does the **Parent Organization**, a subsidiary or any director or officer presently act in the capacity of general partner in a limited or general partnership? _____Yes __✓__ No. If yes, attach details

8. **INSURED PERSONS**

The policy typically covers all duly elected or appointed directors and officers. Please list any other proposed **Insured Person** for which you are requesting coverage

9. **OWNERSHIP**

On what exchange is stock publicly traded, if any?  _N/A_ _____

What is the stock symbol?_____

Price range over last 12 months _____ high _____ low _____ current

**Distribution of Ownership:**

Common shares outstanding _____

Common stock shareholders _____

Common stock owned directly or beneficially by officers who are not directors _____
_____

Name and percentage of holdings of any shareholder who owns 5% or more of the common shares directly or beneficially
_____
_____

Describe fully any other securities convertible to common stock _____
_____

10. **ANNOUNCED CHANGES**

Has the **Parent Organization** publicly disclosed that it now has under consideration any acquisition, tender offer or merger? _____ Yes __✓__ No. If yes, attach details.

Has the **Parent Organization** publicly disclosed or made any new public offering of securities pursuant to the Securities Act of 1933 or exempt from registration under Regulation A, within the last year? _____ Yes __✓__ No. If yes, attach details including the prospectus.

Has the **Parent Organization** or a subsidiary changed auditors in the past 3 years? _____ Yes __✓__ No. If yes, attach details.

Page 2 of 4

Appendix  006

## 11. PAST ACTIVITIES

Has the **Parent Organization,** a subsidiary, any director, officer or other proposed **Insured Person** been involved in any of the following:

Anti-trust, copyright or patent litigation? _____ Yes ✓ No.

Civil or criminal action or administrative proceeding charging violation of a federal or state security law or regulation?        _____ Yes ✓ No.

Any other criminal actions? _____ Yes ✓ No.

Representative actions, class actions or derivative suits?

If yes to any of these, attach details

## 12. PRIOR INSURANCE

Does the **Parent Organization** or any subsidiary currently have directors and officers liability insurance?
✓ Yes _____ No. **If no, skip to Section 14 and answer the warranty statement.** If yes, please provide the following:

| Insurer | Limits | Deductible | Policy Period |
|---------|--------|------------|---------------|
| _CHUBB_ | $ _3,000,000_ | $ _100,000_ | _9/1/01-9/1/02_ |

Has the **Parent Organization,** a subsidiary or any **Insured Person** given written notice under the provisions of any prior or current directors and officers liability policy of specific facts or circumstances which might give rise to a claim being made against any **Insured Person?** _____ Yes ✓ No. If yes, attach details.

Have any loss payments been made on behalf of any **Insured** under any directors and officers liability policy or similar insurance? _____ Yes ✓ No. If yes, attach details.

## 13. CONTINUITY WITH PRIOR COVERAGE

**Note:** This section applies only if you currently have coverage and request continuity of coverage.

Continuity date requested _____

If continuity of coverage is requested:

a. attach a copy of the prior application with which continuity of coverage is to be maintained.
b. the Company will be relying upon the declarations and statements contained in such prior application and those declarations and statements shall be considered to be incorporated in and form a part of the policy of the Company.

## 14. PRIOR KNOWLEDGE/WARRANTY

**Note:** This section applies if you have requested continuity of coverage and your request has not been

**It is important that you fill in the blank in this paragraph. No person proposed for coverage is aware of any facts or ci** would fall within the scope of the proposed coverage, except: **(If no exceptions, please state.)** _____

**It is agreed that if such facts or circumstances exist, whether or not disclosed, any claim or action arising from them is excluded from this proposed coverage.**

Form  14-03-0099 (Ed. 6-93)                                                    Page 3 of 4

Appendix  007

**15. FALSE INFORMATION**

Any person who, knowingly and with the intent to defraud any insurance company or other person, files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

**16. DECLARATION AND SIGNATURE**

The undersigned declares that to the best of his or her knowledge and belief the statements set forth herein are true. Although the signing of this application does not bind the undersigned on behalf of the **Parent Organization** or its directors, officers or **Insured Persons** to effect insurance, the undersigned agrees that this application and its attachments shall be the basis of the contract should a policy be issued and shall be deemed attached to and shall form a part of the policy. The Company is hereby authorized to make any investigation and inquiry in connection with this application that it deems necessary.

This section of the application must be signed by the Chairman of the Board or President.

07/30/02
Date

Signature

President
Title

Page 4 of 4

Appendix 008

# Executive Protection Policy

**Executive Protection Policy for:**

**PRECIS, INC.**

Appendix 009

# Executive Protection Policy

DECLARATIONS

EXECUTIVE PROTECTION POLICY

Policy Number  8168-5014

**Federal Insurance Company,**
a stock insurance company, incorporated
under the laws of Indiana, herein called the
Company.

Item 1.   **Parent Organization:**
PRECIS, INC.
2040 N. Highway 360
Grand Prairie, TX 75050

Item 2.   **Policy Period:**       From    12:01 A.M. on    September 1, 2002
To        12:01 A.M.        September 1, 2003
Local time at the address shown in Item 1.

Item 3.   Coverage Summary
Description
GENERAL TERMS AND CONDITIONS
EXECUTIVE LIABILITY AND INDEMNIFICATION

Item 4.   Termination of
Prior Policies:  8168-5014  (September 1, 2001 - September 1, 2002)

**THE EXECUTIVE LIABILITY AND INDEMNIFICATION, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY
AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE APPLICABLE) ARE ALL
WRITTEN ON A CLAIMS MADE BASIS. EXCEPT AS OTHERWISE PROVIDED, THESE COVERAGE SECTIONS
COVER ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. PLEASE READ
CAREFULLY.**

In Witness Whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but
it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____
Secretary

_____
President

_____
09/03/02
Date

_____
Authorized Employee

# *Executive Protection Policy*

## *General Terms and Conditions*

| | | |
|---|---|---|
| *Territory* | 1. | Coverage shall extend anywhere in the world. |
| *Terms and Conditions* | 2. | Except for the General Terms and Conditions or unless stated to the contrary in any coverage section, the terms and conditions of each coverage section of this policy apply to that section and shall not be construed to apply to any other coverage section of this policy. |
| *Limits of Liability and Deductible Amounts* | 3. | Unless stated to the contrary in any coverage section, the limits of liability and deductible amounts shown for each coverage section of this policy are separate limits of liability and separate deductible amounts pertaining to the coverage section for which they are shown; the application of a deductible amount to a loss under one coverage section of this policy shall not reduce the deductible amount under any other coverage section of this policy. |
| *Notice* | 4. | Notice to the Company under this policy shall be given in writing addressed to: Notice of Claim:<br><br>National Claims Department<br>Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, New Jersey 07059<br><br>All Other Notices:<br><br>Executive Protection Department<br>Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, New Jersey 07059<br><br>Such notice shall be effective on the date of receipt by the Company at such address. |
| *Investigation and Settlement* | 5. | The Company may make any investigation it deems necessary and may, with the written consent of the Insured, make any settlement of a claim it deems expedient. If the Insured withholds consent to such settlement, the Company's liability for all loss on account of such claim shall not exceed the amount for which the Company could have settled such claim plus costs, charges and expenses accrued as of the date such settlement was proposed in writing by the Company to the Insured. |
| *Valuation and Foreign Currency* | 6. | All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if judgment is rendered, settlement is denominated or another element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in the Wall Street Journal on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively. |

Appendix 011

## General Terms and Conditions
*(continued)*

| | | |
|---|---|---|
| *Subrogation* | 7. | In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery, and the Insured shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the Insured. |
| *Action Against the Company* | 8. | No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability nor shall the Company be impleaded by the Insured or his legal representatives. Bankruptcy or insolvency of an Insured or of the estate of an Insured shall not relieve the Company of its obligations nor deprive the Company of its rights under this policy. |
| *Authorization Clause* | 9. | By acceptance of this policy, the **Parent Organization** agrees to act on behalf of all Insureds with respect to the giving and receiving of notice of claim or termination, the payment of premiums and the receiving of any return premiums that may become due under this policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for in the policy (except the giving of notice to apply for the Extended Reporting Period), and the Insureds agree that the **Parent Organization** shall act on their behalf. |
| *Alteration and Assignment* | 10. | No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy which is signed by an authorized representative of the Company. |
| *Termination of Policy or Coverage Section* | 11. | This policy or any coverage section shall terminate at the earliest of the following times: |

    (A)    sixty days after the receipt by the **Parent Organization** of a written notice of termination from the Company,

    (B)    upon the receipt by the Company of written notice of termination from the **Parent Organization,**

    (C)    upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of this policy, or

    (D)    at such other time as may be agreed upon by the Company and the **Parent Organization.**

The Company shall refund the unearned premium computed at customary short rates if the policy or any coverage section is terminated by the **Parent Organization.** Under any other circumstances the refund shall be computed pro rata.

Appendix 012

## *Executive Protection Policy*

---

### *General Terms and Conditions*
*(continued)*

---

| | | |
|---|---|---|
| *Termination of Prior Bonds or Policies* | 12. | Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of this policy shall terminate, if not already terminated, as of the inception date of this policy. Such prior bonds or policies shall not cover any loss under the Crime or Kidnap/Ransom & Extortion coverage sections not discovered and notified to the Company prior to the inception date of this policy. |

---

| | | |
|---|---|---|
| *Definitions* | 13. | When used in this policy:<br>**Parent Organization** means the organization designated in Item 1 of the Declarations of this policy.<br>**Policy Period** means the period of time specified in Item 2 of the Declarations of this policy, subject to prior termination in accordance with Subsection 11 above. If this period is less than or greater than one year, then the Limits of Liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period. |

**Appendix 013**

# Schedule of Forms

To be attached to and form part of
Policy No.   8168-5014

Company:   Federal Insurance Company

Issued to:   PRECIS, INC.

EPP Executive Liability and Indemnification Coverage Section

14-02-3943 (11/99 ed.)

Chubb Executive Protection Policy General Terms and Conditions

14-02-1422 (9/93 ed.)

EPP Executive Liability and Indemnification Coverage Section

14-02-3028 (11/99 ed.)

14-02-3094 (11/99 ed.)

14-02-3136 (11/99 ed.)

14-02-3147 (11/99 ed.)

14-02-3214 (2/99 ed.)

14-02-3482 (11/99 ed.)

14-02-3807 (5/01 ed.)

14-02-4802 (4/01 ed.)

QCBBELK (3/01 ed.)

Appendix  014

**ENDORSEMENT**

Coverage Section:  Chubb Executive Protection Policy General Terms and Conditions

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

### TEXAS AMENDATORY ENDORSEMENT

It is agreed that the **General Terms and Conditions** is amended by deleting subsection 11, Termination of Policy, in its entirety and inserting the following:

(A)   Cancellation by the **Insured**

The **Insured** may cancel the policy at any time by sending the Company a written request or by returning the policy and stating when thereafter cancellation is to take effect.

(B)   Cancellation by the Company

The Company may cancel the policy as follows:

(1)   Policies in effect for 60 days or less may be cancelled by mailing or delivering to the **Parent Organization** written notice of cancellation, stating the reason for cancellation, at least:

    (a)   20 days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

    (b)   60 days before the effective date of cancellation if the Company cancels for any other reason.

(2)   If this policy is in its initial policy period and has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the first named insured is an elected official.

Renewal or continuation policies, or policies in their initial policy period which have been in effect for more than 60 days:

We may cancel only for one or more of the following reasons:

    (a)   fraud in obtaining coverage;

    (b)   failure to pay premiums when due;

    (c)   an increase in hazard within the control of the **Insured** which would produce an increase in rate;

    (d)   loss of reinsurance for the Company covering all or part of the risk covered by the policy; or

    (e)   if the Company has been placed in suspension, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

14-02-1422 (09/1993)                    Page 1

**Appendix  015**

If the Company cancels, it shall mail or deliver to the **Parent Organization** written notice of cancellation, stating the reason for cancellation, at least:

(a) 20 days before the effective date of cancellation if the Company cancels for nonpayment of premium;

(b) 60 days before the effective date of cancellation if the Company cancels for any other reason,
other than non-payment of premium, as listed above.

The Company's notice of cancellation will be mailed to the **Parent Organization's** last mailing address known to the Company and will indicate the date on which coverage is terminated. If notice is mailed, proof of mailing will be sufficient proof of notice.

The earned premium will be computed on a pro rata basis. Any unearned premium will be returned as soon as practicable.

(C) Nonrenewal

If the Company decides not to renew this policy, it will mail or deliver to the **Parent Organization** written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If the notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered.

Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

The Company will mail or deliver its notice to the **Parent Organization's** last mailing address known to the Company. If the notice is mailed, proof of mailing will be sufficient proof of notice.


All other terms and conditions remain unchanged.


_Robert Hamburger_

_____
Authorized Representative

Appendix 016

# *Executive Protection Policy*

DECLARATIONS

EXECUTIVE LIABILITY AND
INDEMNIFICATION COVERAGE SECTION

Item 1. **Parent Organization**:
PRECIS, INC.

Item 2. Limits of Liability:

    (A)    Each **Loss**        $3,000,000.00
    (B)    Each **Policy Period**    $3,000,000.00

Note that the limits of liability and any deductible or retention are reduced or exhausted by **Defense Costs**.

Item 3. Coinsurance Percent:    0.00%

Item 4. Deductible Amount:

    Insuring Clause 2    $100,000.00

Item 5. **Insured Organization**:

    PRECIS, INC. and its Subsidiaries.

Item 6. **Insured Persons**:

Any person who has been, now is, or shall become a duly elected director or a duly elected or appointed officer of the Insured Organization.

Item 7. Extended Reporting Period:

    (A)    Additional Premium:    150% of Annual Premium
    (B)    Additional Period:    1 year

Item 8. Pending or Prior Date:    September 1, 2001

Item 9. Continuity Date:    September 1, 2001

Appendix 017

| *Executive Liability and Indemnification Coverage Section* | In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company agrees as follows: |
|---|---|

## Insuring Clauses

| *Executive Liability Coverage Insuring Clause 1* | 1. | The Company shall pay on behalf of each of the **Insured Persons** all **Loss** for which the **Insured Person** is not indemnified by the **Insured Organization** and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against him, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**. |
|---|---|---|
| *Executive Indemnification Coverage Insuring Clause 2* | 2. | The Company shall pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** grants indemnification to each **Insured Person**, as permitted or required by law, which the **Insured Person** has become legally obligated to pay on account of any **Claim** first made against him, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**. |
| **Estates and Legal Representatives** | 3. | Subject otherwise to the General Terms and Conditions and the limitations, conditions, provisions and other terms of this coverage section, coverage shall extend to **Claims** for the **Wrongful Acts of Insured Persons** made against the estates, heirs, legal representatives or assigns of **Insured Persons** who are deceased or against the legal representatives or assigns of **Insured Persons** who are incompetent, insolvent or bankrupt. |
| **Extended Reporting Period** | 4. | If the Company terminates or refuses to renew this coverage section other than for nonpayment of premium, the **Parent Organization** and the **Insured Persons** shall have the right, upon payment of the additional premium set forth in Item 7(A) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for the period set forth in Item 7(B) of the Declarations for this coverage section (Extended Reporting Period) following the effective date of termination or nonrenewal, but only for any **Wrongful Act** committed, attempted, or allegedly committed or attempted, prior to the effective date of termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is received by the Company within 30 days following the effective date of termination or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. |
|  |  | If the **Parent Organization** terminates or declines to accept renewal, the Company may, if requested, at its sole option, grant an Extended Reporting Period. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew. |

Appendix 018

# *Executive Protection Policy*

---

## Exclusions

| | | |
|---|---|---|
| *Exclusions Applicable to Insuring Clauses 1 and 2* | 5. | The Company shall not be liable for **Loss** on account of any **Claim** made against any **Insured Person**: |

(a) based upon, arising from, or in consequence of any circumstance if written notice of such circumstance has been given under any policy or coverage section of which this coverage section is a renewal or replacement and if such prior policy or coverage section affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Loss**, in whole or in part, as a result of such notice;

(b) based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 8 of the Declarations for this coverage section, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

(c) brought or maintained by or on behalf of any **Insured** except:

    (i) a **Claim** that is a derivative action brought or maintained on behalf of an **Insured Organization** by one or more persons who are not **Insured Persons** and who bring and maintain the **Claim** without the solicitation, assistance or participation of any **Insured**,

    (ii) a **Claim** brought or maintained by an **Insured Person** for the actual or alleged wrongful termination of the **Insured Person**, or

    (iii) a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this coverage section;

(d) for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of any federal, state or local statutory law or common law upon fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of an **Insured Organization**;

(e) for bodily injury, mental or emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; or

(f) based upon, arising from, or in consequence of (i) the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or (ii) any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so; including but not limited to any **Claim** for financial loss to the **Insured Organization**, its security holders or its creditors based upon, arising from, or in consequence of the matters described in (i) or (ii) of this exclusion.

Appendix  019

## *Exclusions*
*(continued)*

| | | |
|---|---|---|
| *Exclusions Applicable to Insuring Clause 1 Only* | 6. | The Company shall not be liable under Insuring Clause 1 for **Loss** on account of any **Claim** made against any **Insured Person**: |

    (a)   for an accounting of profits made from the purchase or sale by such **Insured Person** of securities of the **Insured Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any federal, state or local statutory law or common law;

    (b)   based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a judgment or other final adjudication adverse to the **Insured Person** establishes such a deliberately fraudulent act or omission or willful violation; or

    (c)   based upon, arising from, or in consequence of such **Insured Person** having gained in fact any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled.

| | | |
|---|---|---|
| *Severability of Exclusions* | 7. | With respect to the Exclusions in Subsections 5 and 6 of this coverage section, no fact pertaining to or knowledge possessed by the **Insured Person** shall be imputed to any other **Insured Person** to determine if coverage is available. |

| | | |
|---|---|---|
| **Limit of Liability, Deductible and Coinsurance** | 8. | For the purposes of this coverage section, all **Loss** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of any **Insured Person** shall be deemed one **Loss**, and such **Loss** shall be deemed to have originated in the earliest **Policy Period** in which a **Claim** is first made against any **Insured Person** alleging any such **Wrongful Act or Interrelated Wrongful Acts**. |

The Company's maximum liability for each **Loss**, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Limit of Liability for each **Loss** set forth in Item 2(A) of the Declarations for this coverage section. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period**, whether covered under Insuring Clause 1 or Insuring Clause 2 or both, shall be the Limit of Liability for each **Policy Period** set forth in Item 2(B) of the Declarations for this coverage section.

The Company's liability under Insuring Clause 2 shall apply only to that part of each **Loss** which is excess of the Deductible Amount set forth in Item 4 of the Declarations for this coverage section and such Deductible Amount shall be borne by the **Insureds** uninsured and at their own risk.

If a single **Loss** is covered in part under Insuring Clause 1 and in part under Insuring Clause 2, the Deductible Amount applicable to the **Loss** shall be the Insuring Clause 2 deductible set forth in Item 4 of the Declarations for this coverage section.

With respect to all **Loss** (excess of the applicable Deductible Amount) originating in any one **Policy Period**, the **Insureds** shall bear uninsured and at their own risk that percent of all such **Loss** specified as the Coinsurance Percent in Item 3 of the Declarations for this coverage section, and the Company's liability hereunder shall apply only to the remaining percent of all such **Loss**.

**Appendix 020**

## *Executive Protection Policy*

**Limit of Liability, Deductible and Coinsurance**
*(continued)*

Any **Loss** covered in whole or in part by this coverage section and the Employment Practices Liability coverage section of this policy (if purchased) shall be subject to the limits of liability, deductible and coinsurance percent applicable to such other coverage section; provided, however, if any limit of liability applicable to such other coverage section is exhausted with respect to such **Loss**, any remaining portion of such **Loss** otherwise covered by this coverage section shall be subject to the Limits of Liability and Coinsurance Percent applicable to this coverage section, as reduced by the amount of such **Loss** otherwise covered by this coverage section which is paid by the Company pursuant to such other coverage section.

For purposes of this Subsection 8 only, the Extended Reporting Period, if exercised, shall be part of and not in addition to the immediately preceding **Policy Period**.

---

**Presumptive Indemnification**

9.   If the **Insured Organization**:

(a)   fails or refuses, other than for reason of **Financial Impairment**, to indemnify the **Insured Person** for **Loss**; and

(b)   is permitted or required to indemnify the **Insured Person** for such **Loss** pursuant to:

   (i)   the by-laws or certificate of incorporation of the **Insured Organization** in effect at the inception of this coverage section, or

   (ii)   any subsequently amended or superseding by-laws or certificate of incorporation of the **Insured Organization** provided, however, that such amended or superseding by-laws or certificate of incorporation expand or broaden, and do not restrict or in any way limit, the **Insured Organization's** ability to indemnify the **Insured Person**;

then, notwithstanding any other conditions, provisions or terms of this coverage section to the contrary, any payment by the Company of such **Loss** shall be subject to (i) the Insuring Clause 2 Deductible Amount set forth in Item 4 of the Declarations for this coverage section, and (ii) all of the Exclusions set forth in Subsections 5 and 6 of this coverage section.

For purposes of this Subsection 9, the shareholder and board of director resolutions of the **Insured Organization** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted by such by-laws or certificate of incorporation.

Appendix  021

| **Reporting and Notice** | 10. | The **Insureds** shall, as a condition precedent to exercising their rights under this coverage section, give to the Company written notice as soon as practicable of any **Claim** made against any of them for a **Wrongful Act**. |
|---|---|---|

If during the **Policy Period** or Extended Reporting Period (if exercised) an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstance(s) to the Company, then any **Claims** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period** or the Extended Reporting Period in which the circumstances were first reported to the Company.

The **Insureds** shall, as a condition precedent to exercising their rights under this coverage section, give to the Company such information and cooperation as it may reasonably require, including but not limited to a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insured** first became aware of the **Claim** or circumstances.

| **Defense and Settlement** | 11. | Subject to this Subsection, it shall be the duty of the **Insured Persons** and not the duty of the Company to defend **Claims** made against the **Insured Persons**. |
|---|---|---|

The **Insureds** agree not to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

The Company shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that appears reasonably likely to be covered in whole or in part by this coverage section.

The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agree that in the event of a **Claim** the **Insureds** will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

**Defense Costs** are part of and not in addition to the Limits of Liability set forth in Item 2 of the Declarations for this coverage section, and the payment by the Company of **Defense Costs** reduces such Limits of Liability.

| **Allocation** | 12. | If both **Loss** covered by this coverage section and loss not covered by this coverage section are incurred, either because a **Claim** against the **Insured Persons** includes both covered and uncovered matters or because a **Claim** is made against both an **Insured Person** and others, including the **Insured Organization**, the **Insureds** and the Company shall use their best efforts to agree upon a fair and proper allocation of such amount between covered **Loss** and uncovered loss. |
|---|---|---|

If the **Insureds** and the Company agree on an allocation of **Defense Costs**, the Company shall advance on a current basis **Defense Costs** allocated to the covered **Loss**. If the **Insureds** and the Company cannot agree on an allocation:

(a)    no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

Appendix 022

## *Executive Protection Policy*

**Allocation**
*(continued)*

    (b)   the Company shall advance on a current basis **Defense Costs** which the Company believes to be covered under this coverage section until a different allocation is negotiated, arbitrated or judicially determined; and

    (c)   the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** on account of a **Claim** shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

---

**Other Insurance**

13.  If any **Loss** arising from any **Claim** made against any **Insured Persons** is insured under any other valid policy (ies), prior or current, then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the amount of payment from such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section.

---

**Changes in Exposure**

**Acquisition or Creation of Another Organization**

14.  If the **Insured Organization** (i) acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**, or (ii) acquires any organization by merger into or consolidation with an **Insured Organization**, such organization and its **Insured Persons** shall be **Insureds** under this coverage section but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted, after such acquisition or creation unless the Company agrees, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted, by such **Insured Persons** prior to such acquisition or creation.

If the fair value of all cash, securities, assumed indebtedness and other consideration paid by the **Insured Organization** for any such acquisition or creation exceeds 10% of the total assets of the **Parent Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statements, the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable together with such information as the Company may require and shall pay any reasonable additional premium required by the Company

---

**Appendix 023**

*Changes in*
*Exposure*

| | | |
|---|---|---|
| *Acquisition of Parent Organization by Another Organization* | 15 | If (i) the **Parent Organization** merges into or consolidates with another organization, or (ii) another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Parent Organization**, coverage under this coverage section shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted, by **Insured Persons** prior to such merger, consolidation or acquisition. The **Parent Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable together with such information as the Company may require. |
| *Cessation of Subsidiaries* | 16. | In the event an organization ceases to be a **Subsidiary** before or after the Inception Date of this coverage section, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this coverage section but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted prior to the date such organization ceased to be a **Subsidiary**. |
| *Representation and Severability* | 17. | In granting coverage to any one of the **Insureds**, the Company has relied upon the declarations and statements in the written application for this coverage section and upon any declarations and statements in the original written application submitted to another insurer in respect of the prior coverage incepting as of the Continuity Date set forth in Item 9 of the Declarations for this coverage section. All such declarations and statements are the basis of such coverage and shall be considered as incorporated in and constituting part of this coverage section. |
| | | Such written application(s) for coverage shall be construed as a separate application for coverage by each of the **Insured Persons**. With respect to the declarations and statements contained in such written application(s) for coverage, no statement in the application or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining if coverage is available. |
| *Definitions* | 18. | When used in this coverage section: |
| | | **Claim** means: |
| | | (i)   a written demand for monetary damages, |
| | | (ii)   a civil proceeding commenced by the service of a complaint or similar pleading, |
| | | (iii)   a criminal proceeding commenced by a return of an indictment, or |
| | | (iv)   a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, against any **Insured Person** for a **Wrongful Act**, including any appeal therefrom. |
| | | **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending or investigating **Claims** and the premium for appeal, attachment or similar bonds. |

**Appendix  024**

*Executive Protection Policy*

**Definitions**
*(continued)*

**Financial Impairment** means the status of the **Insured Organization** resulting from (i) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Insured Organization**, or (ii) the **Insured Organization** becoming a debtor in possession.

**Insured**, either in the singular or plural, means the **Insured Organization** and any **Insured Person**.

**Insured Capacity** means the position or capacity designated in Item 6 of the Declarations for this coverage section held by any **Insured Person** but shall not include any position or capacity in any organization other than the **Insured Organization**, even if the **Insured Organization** directed or requested the **Insured Person** to serve in such other position or capacity.

**Insured Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section.

**Insured Person**, either in the singular or plural, means any one or more of those persons designated in Item 6 of the Declarations for this coverage section.

**Interrelated Wrongful Acts** means all causally connected **Wrongful Acts**.

**Loss** means the total amount which any **Insured Person** becomes legally obligated to pay on account of each **Claim** and for all **Claims** in each **Policy Period** and the Extended Reporting Period, if exercised, made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and **Defense Costs**. **Loss** does not include (i) any amount not indemnified by the **Insured Organization** for which the **Insured Person** is absolved from payment by reason of any covenant, agreement or court order, (ii) any amount incurred by the **Insured Organization** (including its board of directors or any committee of the board of directors) in connection with the investigation or evaluation of any **Claim** or potential **Claim** by or on behalf of the **Insured Organization**, (iii) fines or penalties imposed by law or the multiple portion of any multiplied damage award, or (iv) matters uninsurable under the law pursuant to which this coverage section is construed.

**Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**Subsidiary**, either in the singular or plural, means any organization in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by one or more **Insured Organizations**.

**Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by an **Insured Person**, individually or otherwise, in his **Insured Capacity**, or any matter claimed against him solely by reason of his serving in such **Insured Capacity**.

Appendix 025

**ENDORSEMENT**

Coverage Section: EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

### SPOUSAL EXTENSION ENDORSEMENT

In consideration of the premium charged, it is agreed that if a **Claim** against an **Insured Person** includes a claim against the **Insured Person's** lawful spouse solely by reason of (i) such person's status as a spouse of the **Insured Person**, or (ii) such spouse's ownership interest in property which the claimant seeks as recovery for alleged **Wrongful Acts** of the **Insured Person**, all loss which the spouse becomes legally obligated to pay on account of the **Claim** shall be treated as **Loss** which the **Insured Person** becomes legally obligated to pay on account of the **Claim** made against the **Insured Person**. All limitations, conditions, provisions and other terms of coverage applicable to the **Insured Person's Loss** shall also be applicable to the spousal loss.

The coverage extension afforded by this Endorsement does not apply to any **Claim** alleging any act or omission by the **Insured Person's** spouse.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

**Appendix 026**

**ENDORSEMENT**

Coverage Section: EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

### BI-LATERAL ERP ENDORSEMENT

In consideration of the premium charged, it is agreed that the Extended Reporting Period provision is deleted in its entirety and replaced by the following:

**Extended Reporting Period**

4.  If coverage hereunder is canceled or nonrenewed for any reason other than nonpayment of premium, the **Insured Organization** and the **Insured Persons** shall have the right, upon payment of the additional premium set forth in the Declarations, to an extension of the coverage granted hereunder for the period set forth in the Declarations following the effective date of cancellation or nonrenewal, but only for any **Wrongful Act** occurring prior to the effective date of cancellation or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is received by the Company within 30 days following the effective date of cancellation or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

14-02-3094 (11/1999)                    Page 1

**Appendix 027**

**ENDORSEMENT**

Coverage Section: EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

### PRIOR ACTS EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that the following exclusions, applicable to all Insuring Clauses, is added:

(g)     The Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of **Wrongful Acts** where all or any part of such acts occurred prior to June 8, 2001..

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

**Appendix 028**

**ENDORSEMENT**

Coverage Section: EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 4

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

———————————————————————————————————————

AMEND DEFINITION OF "LOSS" ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.   The **Definitions** are amended as follows:

 a.   The definition of **Loss** is deleted in its entirety and the following is inserted:

 **Loss** means the total amount which any **Insured Person** becomes legally obligated to pay on account of each **Claim** and for all **Claims** in each **Policy Period** and the Extended Reporting Period, if exercised, made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and **Defense Costs**. **Loss** does not include:

 (i)   any amount not indemnified by the **Insured Organization** for which the **Insured Person** is absolved from payment by reason of any covenant, agreement, or court order;

 (ii)   any amount incurred by the **Insured Organization** (including its board of directors or any committee of the board of directors) in connection with the investigation or evaluation of any **Claim** or potential **Claim** by or on behalf of the **Insured Organization**;

 (iii)   matters uninsurable under the law applicable to this coverage; or

 (iv)   fines or penalties imposed by law or the multiple portion of any multiplied damage award. However, fines, penalties or multiplied damage awards shall not include punitive or exemplary damages in any **Claim**, except **Employment Claim**, if such damages are insurable under the law applicable to this coverage. The law of the jurisdiction most favorable to the insurability of those damages shall control for the purpose of resolving any dispute between the Company and the **Insured** regarding whether such damages are insurable, provided that such jurisdiction is where:

 (1)   those damages were awarded or imposed;

 (2)   any **Wrongful Act** occurred for which such damages were awarded or imposed;

 (3)   any **Insured Organization** is incorporated or has its principal place of business; or

 (4)   the Company is incorporated or has its principal place of business.

 b.   The following definition is added:

 **Employment Claim** means any **Claim** which is brought or maintained by or on behalf of any past, present or prospective employee(s) of the **Insured Organization** against any **Insured** for any **Wrongful Act** in connection with any actual or alleged wrongful dismissal, discharge or termination of employment, breach of any oral or written employment contract or quasi-

Appendix 029

employment contract, employment-related misrepresentation, violation of employment discrimination laws (including workplace and sexual harassment), wrongful failure to employ or promote, wrongful discipline, wrongful deprivation of a career opportunity, failure to grant tenure, negligent evaluation, invasion of privacy, employment-related defamation or employment-related wrongful infliction of emotional distress.

2.    Solely with respect to a **Claim** for punitive or exemplary damages insurable pursuant to section 1a(iv) of this endorsement, the **Exclusions Applicable to Insuring Clause 1 Only** are amended by deleting paragraph (b) in its entirety and inserting it as a new paragraph (g) in the **Exclusions Applicable to Insuring Clauses 1 and 2**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

---

Authorized Representative

**Appendix 030**

**ENDORSEMENT**

Coverage Section:  EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 5

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

_____

ADD INSURING CLAUSE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.    The following Insuring Clause is added:

**Insured Organization Coverage - Insuring Clause 3**

The Company shall pay on behalf of any **Insured Organization** all **Loss** for which it becomes legally obligated to pay on account of any **Securities Claim** first made against it during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act**.

2.    The Definitions are amended as follows:

a.    The definitions of **Claim** and **Wrongful Act** are deleted in their entirety and replaced with the following:

**Claim** means:

(a)    For purposes of coverage under Insuring Clauses 1 or 2:

(i)    a written demand for monetary damages or non-monetary relief;

(ii)   a civil proceeding commenced by the service of a complaint or similar pleading;

(iii)  a criminal proceeding commenced by the return of an indictment; or

(iv)   a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against any **Insured Person** for a **Wrongful Act** or **Interrelated Wrongful Act**, including any appeal therefrom;

(b)    For purposes of coverage under Insuring Clause 3:

(i)    a written demand for monetary damages or non-monetary relief;

(ii)   a civil proceeding commenced by the service of a complaint or similar pleading; or

(iii)  a criminal proceeding commenced by the return of an indictment;

against any **Insured Organization** for a **Wrongful Act** or **Interrelated Wrongful Act**, including any appeal therefrom.

**Wrongful Act** means:

14-02-3214 (02/1999)                          Page 1

Appendix  031

(a)    For purposes of coverage under Insuring Clauses 1 or 2, any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by any **Insured Person** before or during the **Policy Period**, individually or otherwise, in his **Insured Capacity**, or any matter claimed against him solely by reason of serving in such **Insured Capacity**;

(b)    For purposes of coverage under Insuring Clause 3, any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by any **Insured** before or during the **Policy Period**.

b.    The following definitions are added:

**Securities Claim** means any **Claim** which in whole or in part, is:

(a)    based upon, arising from or in consequence of a **Securities Transaction**; or

(b)    brought by or on behalf of any securities holder of any **Insured Organization**.

**Securities Transaction** means the purchase or sale of, or offer to purchase or sell, any securities issued by any **Insured Organization**.

c.    The definitions of **Insured Person** and **Loss** are amended by adding the following:

**Insured Person** also means:

(i)    For purposes of coverage under Insuring Clause 1 or 2, any past, present or future employee (other than officers) of the **Insured Organization**, but only for **Wrongful Acts** based upon, arising from or in consequence of any **Securities Transaction**; and

(ii)    For purposes of coverage under Insuring Clause 3, the **Insured Organization**.

**Loss** does not include any amount allocated to uncovered loss pursuant to the **Allocation** provision. **Loss** includes punitive or exemplary damages which any **Insured Organization** becomes legally obligated to pay, provided that the punitive or exemplary damages are on account of a **Securities Claim** which is otherwise covered and provided such punitive or exemplary damages are insurable under the law pursuant to which coverage hereunder is construed.

The law of the jurisdiction most favorable to the insurability of those damages shall control for the purpose of resolving any dispute between the Company and the **Insured** regarding whether such damages are insurable, provided that such jurisdiction is where:

(1)    those damages were awarded or imposed;

(2)    any **Wrongful Act** occurred for which such damages were awarded or imposed;

(3)    any **Insured** is incorporated or has its principal place of business; or

(4)    the Company is incorporated or has its principal place of business.

3.    The heading, Exclusions Applicable to Insuring Clauses 1 and 2, is deleted in its entirety and the following is inserted:

**Exclusions Applicable To All Insuring Clauses**

4.    The Exclusions Applicable To All Insuring Clauses are amended by adding the following to paragraph (c):

(iv)    a claim that is brought by any **Insured Person** identified in section 2c(i) of this endorsement for any **Wrongful Act** based upon, arising from or in consequence of any **Securities Transaction**.

5.    The following additional exclusions are added:

**Exclusions Applicable to Insuring Clause 3**

6.1    The Company shall not be liable under Insuring Clause 3 for **Loss** on account of any **Claim** made against any **Insured Organization**:

Appendix 032

(a) based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by any past, present or future chief financial officer, President or Chairman if a judgment or other final adjudication adverse to such **Insured Organization** establishes such a deliberately fraudulent act or omission or willful violation.

6.2 The Company shall not be liable under Insuring Clause 3 for that part of **Loss**, other than **Defense Costs**:

   (a) which is based upon, arising from, or in consequence of the actual or proposed payment by any **Insured Organization** of allegedly inadequate or excessive consideration in connection with its purchase of securities issued by any **Insured Organization**; or

   (b) which is based upon, arising from, or in consequence of any **Insured Organization** having gained in fact any profit or advantage to which it was not legally entitled.

6. The second, third and fourth paragraphs of the Limit of Liability, Deductible and Coinsurance provision, are deleted in their entirety and replaced with the following:

   The Company's maximum liability for each **Loss**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Loss** set forth in the Declarations. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Policy Period** set forth in the Declarations.

   The Company's liability under Insuring Clause 2 or Insuring Clause 3 shall apply only to that part of each **Loss** which is excess of the Deductible Amount set forth in the Declarations, and such Deductible Amount shall be borne by the **Insureds** uninsured and at their own risk.

   The maximum Deductible Amount applicable to a single **Loss** which is covered under more than one Insuring Clause shall be the Deductible Amount set forth in the Declarations.

7. The first paragraph of the Allocation provision is deleted in its entirety and replaced with the following:

   (a) If a **Securities Claim** covered, in whole or in part, under Insuring Clauses 2 or 3 results in any **Insured Person** under Insuring Clause 2 or any **Insured Organization** under Insuring Clause 3 incurring both **Loss** covered hereunder and loss not covered hereunder, because such **Securities Claim** includes both covered and uncovered matters, the **Insureds** and the Company shall allocate such amount to **Loss** as follows:

      (i) 100% of such amount constituting **Defense Costs** shall be allocated to covered **Loss**; and

      (ii) 100% of such amount other than **Defense Costs** shall be allocated to covered **Loss**.

      (iii) Notwithstanding paragraphs 7(a)(i) and (ii) above, the **Insureds** and the Company shall allocate that part of **Loss** subject to exclusions 6.1 and 6.2 based upon the relative legal exposure of the **Insured Persons** and the **Insured Organization**.

   (b) If any other **Claim** results in both **Loss** covered hereunder and loss not covered hereunder, because such **Claim** includes both covered and uncovered matters, the **Insureds** and the Company shall allocate such amount between covered **Loss** and uncovered loss based upon the relative legal exposures of the **Insureds**.

8. For purposes of coverage under Insuring Clause 3 only, the second paragraph of the Representations and Severability provision is deleted in its entirety and replaced with the following:

   With respect to the declarations and statements contained in the written application(s) for coverage, all declarations and statements contained in such application and knowledge possessed by any

Appendix 033

**Insured Person** identified in the Declarations shall be imputed to any **Insured Organization** for the purpose of determining if coverage is available.

9.  For purposes of coverage under Insuring Clause 3 only, the Severability of Exclusions provision is deleted in its entirety and replaced with the following:

With respect to the Exclusions Applicable To All Insuring Clauses and the Exclusions Applicable To Insuring Clause 3, only facts pertaining to and knowledge possessed by any past, present or future chief financial officer, President or Chairman of any **Insured Organization** shall be imputed to any **Insured Organization** to determine if coverage is available for such **Insured Organization**.

10. For purposes of coverage for employees who are **Insured Persons** pursuant to paragraph 2c(i) of this endorsement, the Presumptive Indemnification provision, is amended as follows:

    a.  Paragraph (b) is deleted in its entirety and replaced with the following:

        (b)  is permitted or required to indemnify the **Insured Person** for such **Loss** pursuant to common or statutory law,

    b.  The final paragraph is deleted in its entirety and replaced with the following:

        For purposes of this provision, the shareholder and board of director resolutions of the **Insured Organization** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted by common or statutory law.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

Appendix 034

**ENDORSEMENT**

Coverage Section: EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 6

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

INVESTIGATIVE COSTS COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1. The following is added:

    Investigative Costs Coverage
    Insuring Clause 4

    The Company shall pay on behalf of the **Insured Organization** all **Investigative Costs** which such **Insured Organization** becomes legally obligated to pay on account of any **Shareholder Derivative Demand** first made during the **Policy Period** or, if exercised, the Extended Reporting Period, for a **Wrongful Act** by an **Insured Person** occurring before or during the **Policy Period**.

2. The Exclusions applicable to Insuring Clauses 1 and 2 shall apply to Insuring Clause 4.

3. The **Limit of Liability, Deductible and Coinsurance** provision is amended as follows:

    a. The following is added to paragraph two:

        The Company's maximum liability for all **Investigative Costs** covered under Insuring Clause 4 on account of all **Shareholder Derivative Demands** first made during the same **Policy Period** shall be $250,000. This is a sublimit which further limits and does not increase the Company's maximum liability hereunder as set forth in the Declarations.

    b. The following is added to paragraph three:

        No deductible amount shall apply to **Investigative Costs** covered under Insuring Clause 4.

4. The **Defense and Settlement** provision, is amended for purposes of coverage under Insuring Clause 4 by adding the following solely with respect to the coverage provided by this endorsement:

    It shall be the duty of the **Insured Organization** and not the duty of the Company to investigate and evaluate any **Shareholder Derivative Demand**.

5. The **Definitions**, are amended by adding the following:

    **Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred by the **Insured Organization** (including its board of directors or any committee of the board of directors) in connection with the investigation or evaluation of any **Shareholder Derivative Demand**.

14-02-3482 (11/1999)                    Page 1

**Appendix 035**

**Shareholder Derivative Demand** means any written demand, by one or more shareholders of an **Insured Organization**, upon the board of directors of such **Insured Organization**, to bring a civil proceeding in a court of law against any **Insured Person** for a **Wrongful Act** by an **Insured Person** occurring before or during the **Policy Period**.

6.   For purposes of coverage under Insuring Clause 4 only,

    a.   all references hereunder to **Loss** or **Defense Costs** shall only mean **Investigation Costs**; and

    b.   all references hereunder to **Claim** or to "**Claim** against any **Insured Person**" shall only mean any **Shareholder Derivative Demand**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-3482 (11/1999)                      Page 2

**Appendix  036**

**ENDORSEMENT**

Coverage Section: Executive Liability and Indemnification

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 7

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

SECURITIES CLAIMS DEDUCTIBLE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Solely with respect to **Claims** made against any **Insured Person** which are based upon, arising from, or in consequence of any actual or alleged violation of the following:

      (a)    the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, any other federal law with respect to the regulation of securities, any rules or regulations promulgated under any of the foregoing, any rules or regulations of the United States Securities and Exchange Commission, or any amendment of any such law, rule or regulation;

      (b)    any state securities or "blue sky" laws or rules or regulations, or any amendment of any such law, rule or regulation; or

      (c)    any provision of the common law imposing liability in connection with the offer, sale or purchase of securities,

      Item 4 of the Declarations is amended to read in its entirety as follows:

            Item 4.        Deductible Amount:

                    Insuring Clause 2:        $150,000.00

(2)    With respect to all other **Claims**, Item 4 of the Declarations shall remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

14-02-3807 (5/2001)                    Page 1

**Appendix 037**

All other terms, conditions and limitations of this policy shall remain unchanged.


*Robert Hamburger*

**Authorized Representative**

Appendix  038

**ENDORSEMENT**

Coverage Section:  EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 8

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

### AMEND CHANGES IN EXPOSURE ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 14. Changes in Exposure - Acquisition or Creation of Another Organization is amended to read in its entirety as follows:

If the fair value of all cash, securities, assumed indebtedness and other consideration paid by the **Insured Organization** for any such acquisition or creation exceeds *15%* of the total assets of the **Parent Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statements, the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable together with such information as the Company may require and shall pay any reasonable additional premium required by the Company.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

14-02-4802 (4/2001) rev.                    Page 1

**ENDORSEMENT**

Coverage Section:  EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 9

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

NON-PROFIT OUTSIDE DIRECTORSHIP ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The term **"Insured Person,"** as defined in Section 18. Definitions of this coverage section, is amended to read
        in its entirety as follows:

        **Insured Person,** either singular or plural, means any one or more of those persons designated in Item 6 of
        the Declarations for this coverage section and any elected or appointed officer of the **Insured Organization**
        in an **Outside Directorship.**

(2)     Section 18. Definitions of this coverage section is amended by adding the following:

        **Outside Directorship** means the position of a director, officer, trustee, governor, or equivalent executive
        position with an **Outside Entity** if service by an **Insured Person** in such position was at the specific request
        of the **Insured Organization** or was part of the duties regularly assigned to the **Insured Person** by the
        **Insured Organization.**

        **Outside Entity** means any non-profit corporation, community chest, fund or foundation that is not included in
        the definition of **Insured Organization,** as defined in Section 18. Definitions of this coverage section, and that
        is exempt from Federal Income Tax pursuant to the United States Internal Revenue Act of 1986, as amended.

(3)     Coverage provided to any **Insured Person** while serving in an **Outside Directorship** shall:

        (a)     not extend to the **Outside Entity** or to any director, officer, trustee, governor or any other equivalent
                executive or employee of the **Outside Entity,** other than the **Insured Person** serving in the **Outside
                Directorship;**

        (b)     be specifically excess of any indemnity (other than any indemnity provided by the **Insured
                Organization)** or insurance available to such **Insured Person** by reason of serving in the **Outside
                Directorship,** including any indemnity or insurance available from or provided by the **Outside Entity;**

QCBBELK (03/2001)                    Page 1

Appendix  040

(c)    not extend to **Loss** on account of any **Claim** made against any **Insured Person** for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** while serving in the **Outside Directorship** if such **Wrongful Act** occurs after the date (i) such **Insured Person** ceases to be an officer of the **Insured Organization**, or (ii) service by such **Insured Person** in the **Outside Directorship** ceases to be at the specific request of the **Insured Organization** or a part of the duties regularly assigned to the **Insured Person** by the **Insured Organization**;

(d)    not extend to **Loss** on account of any **Claim** made against any **Insured Person** for a **Wrongful Act** which occurs while such **Insured Person** is serving in the **Outside Directorship** where such **Claim** is (i) by the **Outside Entity**, or (ii) on behalf of the **Outside Entity** and a director, officer, trustee, governor or equivalent executive of the **Outside Entity** instigates such **Claim**, or (iii) by any director, officer, trustee, governor, or equivalent executive of the **Outside Entity**.

(4)    The Company's maximum liability to pay **Loss**, including this endorsement, shall not exceed the Limit of Liability set forth in the Declarations.  This endorsement does not increase the Company's maximum liability beyond the Limits of Liability set forth in the Declarations.

(5)    Payment by the Company or any of its subsidiaries or affiliated companies under another policy on account of a **Claim** also covered pursuant to this endorsement shall reduce by the amount of the payment the Company's Limits of Liability with respect to such **Claim**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____

Authorized Representative

Appendix  041

**ENDORSEMENT**

Coverage Section: EPP Executive Liability and Indemnification Coverage Section

Effective date of
this endorsement: September 1, 2002

Company: Federal Insurance Company

Endorsement No. 10

To be attached to and
form a part of Policy No. 8168-5014

Issued to: PRECIS, INC.

---

AMEND INSURED ORGANIZATION ENDORSEMENT

In consideration of the premium charged, it is agreed that Item 1 of the Declarations, Insured Organization, is amended to read in its entirety as follows:

> Precis, Inc.

Foresight, Inc.
Care Entree
The Capella Group
Smartcare Insurance Agency, LLC

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

14-02-6473 (02/2002)          Page 1

**Appendix 042**

LAW OFFICE

## EUGENE MICHAEL KENNEDY, P.A.

517 S.W. 1st AVENUE, FORT LAUDERDALE, FLORIDA 33301

TELEPHONE: (954) 524-4155                                                    FACSIMILE: (954) 524-4169

December 2, 2002

David May, Esq.
Chief Executive Officer
Precis, Inc.
2040 North Highway 360
Grand Prairie, Texas 75050

RE:      Precis, Inc.; *Requested follow-up regarding Common Stock Purchase Warrant damage.*

Dear Mr. May:

In keeping with your request in our telephone conversation a couple of weeks ago, I am summarizing the circumstances presented in connection with my months long attempt to exercise my 15,000 Precis Common Stock Purchase Warrants on the same cashless exercise basis you afforded your sales force and others, particularly in the April to June, 2002 time period.

As you know, the strike price for my Warrants is $9.37. From the time that my Warrants were in the money, through conversations with Atty. Dunn, and through multiple telephone attempts and discussions with you personally during the first quarter, I attempted to achieve cashless exercise of my Warrants and recover the benefit I was entitled to during the entire first quarter. When the price of the stock rose above $14 during February, 2002, I redoubled my efforts to secure the requisite consent from you for cashless exercise as was being afforded to insiders at that time.

During the period March through May, 2002, the stock closed steadily between $14 and $15.50 per share reaching, as you well know, more than $16 per share at the end of April, 2002. Throughout that period I repeatedly telephoned you seeking the requisite consent for my broker, Burt Martin Arnold Securities, Inc. to undertake execution of cashless exercise of my 15,000 Warrants, as you well know, to no avail. Throughout that same period, my broker, Burt Arnold personally, repeatedly, telephone you directly seeking Precis' consent to cashless exercise of my Warrants, also to no avail.

In that same period, millions of your shares of Common Stock were traded above $14 per share and an untold number of insiders and sales force personnel, etc. were afforded the Company's consent to cashless exercise which I was seeking on the same footing as those warrantholders.

As you know, eventually, the Company's consent was received by Burt Martin Arnold Securities, Inc. with respect to my Warrants but months later and, of course, only after the price had declined below $10 and, shortly thereafter, as you well know, below the strike price.

Mr. David May
December 2, 2002
Page 2

I think that delaying the granting of Company consent to cashless exercise of my 15,000 Warrants during all those months, was purposeful and wilful and intended to retard sales of your Common Stock in the public marketplace. I think it was a strategy employed by the Company to preclude non-insiders from the benefit of timely exercise for substantial gains. At the peak of the Common Stock, at the end of April, 2002, in my case alone, my inability to sell by cashless exercise deprived me of more than $120,000 through no fault or contribution of fault by me. In reviewing the sales at or around $14 to $16, its obvious that consent to cashless to exercise was granted wholesale to affiliates and insiders and deliberately delayed and discouraged to non-affiliates like me.

As I indicated in our telephone conversation, I want consideration and adjustment in the circumstances. I would suggest payment to me by the Company in the amount of $5 per Warrant in exchange for surrender of my Common Stock Purchase Warrants. I would be happy to consider an alternate proposal by the Company at this point.

Remember, with prejudicial and discriminatory non-response to my and my broker's months long request for the requisite consent of the Company, I was precluded from realizing a gain in excess of $90,000 available to me during a period of weeks near the end of April, 2002. Furthermore, I have been deprived of the use and benefit of that gain since that time during which I would have also realized further appreciation of the proceeds.

As we discussed in our telephone conversation, I'm sure there are many others positioned exactly in my situation and that the Company has consistently, selectively, delayed, obstructed and discouraged cashless exercise in the same time periods. Your profession of ignorance of cashless Warrant exercise in our conversation does not impress.

I want an adjustment. The Company to this point has concealed its aid rendered to certain warrantholders in the same period when it was obstructing certain other, unaffiliated warrantholders. In the current environment that's an egregious pattern previously pursued by much bigger companies recently in the news for the same kind of conduct.

Please don't take this discussion lightly. I have no intention of quietly walking away from my injury. I am willing to accept an appropriate adjustment. Failing that however, I will inquire elsewhere and determine the size of the Precis liability in the circumstances. Considering that the expiration date of my Warrants is approaching, I would suggest prompt attention to this matter. I need a response and resolution in days. Since discovery in the matter will be onerous and extensive, I have no intention of cutting short the available time. Your kind cooperation and anticipated courtesies in prompt response will be appreciated.

Sincerely,

EUGENE MICHAEL KENNEDY, ESQ.

EMK/kf

KENNEDY 000008

Appendix 044

D

12/9/02

Mrs. Judith Henkels
Care Entrée
Facsimile 972-606-9637

Re: Discriminatory treatment of warrant holders during 2002

Dear Mrs. Henkels,

I am among a group of holders of in excess of 200,000 Precis warrants.
Recently, I attempted unsuccessfully to contact you via phone to express our outrage and
discuss the reparation of this matter.
Our group of warrant holders was denied the ability to cash in our warrants by the
Deliberate actions and stalling of David May , who is under your direct command.
We were precluded from exercising and selling the shares of précis, while employees,
other warrant holders, insiders and Associates of précis sold in multiple transactions and
large quantity in the same time frame in which we were denied the same opportunity.
Our damages, pre-interest, *exceed $1.5 Million* and are growing. We view you, as CEO,
David May and Precis to be responsible, sharing liability for this damage.
We are willing to entertain settlement of this matter but not by being subject to
offensive and abusive stalling and schmoozing by David May. Absent your prompt
attention to this situation, we will commence litigation to seek a proper resolution.

Sincerely,

Robert T. Kirk
949-715-3863
949-715-3873 facsimile
949-466-1309 mobile
rtkirk7@aol.com

cc: EK, ESQ./KD/PD, ESQ./SA/ML/USACA

KIRK 000076

Appendix 045



# PRECIS, INC.

## FACSIMILE TRANSMITTAL SHEET

| TO Kim Pickle | FROM: Karen Robb |
|---|---|
| COMPANY: Palmer & Cay | DATE: 9/16/2003 |
| FAX NUMBER: 404-231-9585 | TOTAL NO. OF PAGES INCLUDING COVER: Fourteen (14) |
| PHONE NUMBER: 404-504-8128 | SENDER'S FAX NUMBER: 972-343-2077 |
| RE: Robert Kirk, et al vs Precis, Inc., et al | SENDER'S PHONE NUMBER: 972-522-2008, X 4139 |

☑ URGENT  ☑ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

**NOTES/COMMENTS:**

Per our telephone conversation, please find attached Plaintiff's Original Petition in re: Robert Kirk, Individually and d/b/a US Asian Advisors, LLC, Eugene M. Kennedy, P.A., Stewart & Associates, CPA's, P.A., and Kimberly DeCamp, Plaintiffs, vs. Precis, Inc. and David May, Defendants.

It is my understanding from our conversation that you will give this to your litigation manager, who will put your carrier on notice.

Thank you.


Karen Robb
Legal Assistant

2040 N. HIGHWAY 360
GRAND PRAIRIE, TEXAS 75050
972-522-2008

09/26/03  FRI 08:32  [TX/RX NO 7722]  ☑011

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

**COPY**

### CITATION

Cause No. 236-201468-03

ROBERT KIRK, ET AL      VS.      PRECIS, INC., ET AL

TO: PRECIS INC

B/S JUDITH HENKELS 2040 N HWY 360 GRAND PRAIRIE, TX 75050-

You said DEFENDANT are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before
the 236th District Court, 401 W BELKNAP, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth.
Tarrant County, Texas said PLAINTIFF being
ROBERT KIRK, EUGENE M KENNEDY, PA, STEWART & ASSOCIATES PA, KIMBERLY DECAMP

Filed in said Court on August 29th, 2003 against
PRECIS INC, DAVID MAY

For suit, said suit being numbered 236-201468-03 the nature of which demand is as shown on said
PLAINTIFF'S ORIGINAL PETITION a copy of which accompanies this citation.

JOHN H GLOVER
Attorney for ROBERT KIRK Phone No. (713)658-1818
Address     CHAMBERLAIN HRDLICKA WHITE WILLIAMS & MARTIN 1200 SM

    Thomas A. Wilder     , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the September 3rd, 2003

By _Dimity Snelson_ Deputy
DIMITY SNELSON

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk
401 W. Belknap
Fort Worth, Texas 76196-0402

### OFFICER'S RETURN

Received this Citation on the _____ day of _____, at _____ o'clock ___M; and executed at
_____ within the county of _____, State of _____ at _____ o'clock _M
on the _____ day of _____, _____ By delivering to the within named (Def.) _____
_____
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION
having first endorsed on same the date of delivery.

Authorized Person/Constable/Sheriff: _____
County of _____ State of_____ By _____ Deputy
Fees $_____
(Must be verified if served outside the State of Texas)
State of _____ County of _____
Signed and sworn to by the said _____ before me this _____ day of _____ ____
to certify which witness my hand and seal of office
(Seal)
County of _____, State of _____

09/26/03 FRI 08:32 [TX/RX NO 7722] ☒012

Appendix 047

DATED HARRIS

'03 SEP -8 P3:04

DATE SERVED 9-10-03
TIME SERVED
(Signed)

*CITATION*

Cause No. 236-201468-03

ROBERT KIRK, ET AL

VS.

PRECIS, INC., ET AL

**ISSUED**

This 3rd day of Sept, 2003

Thomas A. Wilder
Tarrant County District Clerk
401 W BELKNAP
FORT WORTH TX 76196-0402

By Deputy

JOHN H GLOVER
Attorney for: ROBERT KIRK
Phone No. (713)658-1818
ADDRESS: CHAMBERLAIN HRDLICKA WHITE WILLIAMS & MAR
1200 SMITH ST STE 1400
HOUSTON, TX 77002-4310

CIVIL LAW *COPY*



*2362014680300001*

  
236 201 468 03

| | |
|---|---|
| ROBERT KIRK, INDIVIDUALLY AND D/B/A § <br> US ASIAN ADVISORS, LLC, EUGENE M. § <br> KENNEDY, P.A., STEWART & ASSOCIATES, § <br> CPA's, P.A., and KIMBERLY DECAMP § <br> § <br> Plaintiffs, § <br> § <br> VS. § <br> § <br> PRECIS, INC. and § <br> DAVID MAY § <br> § <br> Defendants. § | IN THE DISTRICT COURT OF <br><br><br><br> TARRANT COUNTY, T E X A S <br><br><br><br> _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THE COURT:

Robert Kirk, individually and d/b/a US Asian Capital Advisors, LLC, Eugene M. Kennedy, P.A., Stewart & Associates, and Kimberly DeCamp ("*Plaintiffs*"), file this their Original Petition complaining of Defendants Precis, Inc. and David May (collectively, "*Defendants*"), and for cause of action would show the following:

### A. Discovery Control Plan

1.  Pursuant to Rule 190 of the Texas Rules of Civil Procedure discovery is intended to be conducted under Level 2.

### B. Nature of the Case

2.  This case is about Defendants' interference with the Plaintiffs' attempt to exercise their Precis stock warrants and options (the "Warrants and Options"), and Plaintiffs' misrepresentations regarding the exercise of the options and warrants

## C. Parties

3    Robert Kirk, individually and d/b/a U.S Asian Capital Investors, LLC, is an individual residing in Irving, California

4.    Plaintiff Eugene M. Kennedy, P.A. is a Florida professional association with its principal place of business in Fort Lauderdale, Florida.

5.    Stewart and Associates, P.A. is a Florida professional association, with its principle place of business located in Fort Lauderdale, Florida.

6.    Kimberly DeCamp is an individual who resides in Kentucky.

7.    Defendant Precis, Inc. is an Oklahoma corporation with its principle place of business located in Grand Prairie, ~~Dallas~~ *TARRANT* County, Texas.  Precis may be served with process by serving its president, Judith Henkels, or other person in charge, at 2040 N. Highway 360, Grand Prairie, ~~Dallas~~ *TARRANT* County, Texas 75050 or wherever she may be found.  '

8    Defendant David May is an individual residing in ~~Dallas~~ *TARRANT* County, Texas.  He may be served with process by serving him at his place of business at 2040 N. Highway 360, Grand Prairie, ~~Dallas~~ *TARRANT* County, Texas 75050 or wherever he may be found.

### D. Venue and Jurisdiction

9    Venue is proper in this Court because all or a substantial part of the events or omissions giving rise to the claims occurred in ~~Dallas~~ *TARRANT* County, Texas.  TEX. CIV. PRAC. & REM. CODE §15.002(a)(1).  This Court has jurisdiction over each of the parties and jurisdiction to grant all relief requested by Plaintiffs as that the amount in controversy is within the jurisdictional limits of this Court

2

### E. Facts

10.     Defendant Precis is in the business of providing healthcare programs.  Precis's stock is publicly traded on the NASDAQ under the symbol PCIS.  Defendant May is Precis' General Counsel.  As an attorney, Mr. May has professional responsibilities to those to whom he gives professional advise.

11.     Plaintiffs own Precis Common Stock Purchase Warrants ("Warrants") entitling Plaintiffs to purchase 61,000 shares of Precis common stock at an exercise price of $9.00.[1] Plaintiffs also own stock options ("Options") entitling them to 185,000 shares of Precis common stock at an exercise price of $9.37.[2]

12.     Plaintiffs individually own the Warrants and Options that enable them to purchase shares of Precis stock at a stated "strike" price.  The Warrants have an expiration date of February 8, 2005 and the Options have an expiration date of June 30, 2003.  Each Plaintiff held a separate contract with Precis for their respective Warrants and Options describing their conversion rights.  In February 2002, Precis's stock price exceeded the strike prices of the Warrants and Options, which created economic value to Plaintiffs.  Plaintiffs requested their stock broker, Burt Martin Arnold Securities, Inc. ("BMAS"), to sell their Warrants and Options. In accordance with the established policy of BMAS, on April 30, 2002 it faxed a written request to Defendants requesting confirmation by Precis verifying that the Warrants and Options were

---

[1]  Plaintiffs' ownership of Warrants/Warrants is as follows:

| | |
|---|---|
| U.S. Asian | 9,000 |
| DeComp | 48,000 |
| Stewart | 4,000 |

[2]  Plaintiffs' ownership of Options is as follows:

| | |
|---|---|
| Kennedy | 15,000 |
| DeCamp | 170,000 |

3

Appendix  051

without restrictions and could be traded (the "Verification Letter"). Issuance of a Verification Letter is a standard industry and regulatory requirement when trading in Options and/or Warrants

13.    Following its receipt of notice that the Plaintiffs had elected to exercise the sale of their Warrants and Options and request for the Verification Letter, the Defendants did nothing. BMAS followed up with numerous telephone calls to Defendant May, the general counsel of Precis, to obtain the necessary Verification Letter. On some occasions, BMAS reached Defendant May, on others messages were left. Defendant May repeatedly said that he was "looking into the matter", "would get back to BMAS", was "busy" and gave other dilatory excuses, but continued to not issue the Verification Letter. Finally, on July 18, 2002, six (6) weeks after the written request form BMAS, Defendants issued the requested Verification Letter as to 76,000 shares. But by that time, the stock price had fallen from a high price in early May of over $16.00 per share to a price less than the strike price, thereby preventing the profitable exercise of the Warrants and Options. Defendants' actions, misrepresentations and failure to timely issue the Verification Letter until after the market value of the Precis stock had fallen below the strike price has damaged Plaintiffs in excess of the jurisdictional limits of this Court.

14.    With the proceeds of the sale of the Warrants, Plaintiff DeCamp intended to fund the exercise of the Options owned by her.

15.    Plaintiff Kennedy independently initiated discussions with Defendants to sell his Options in December of 2001. These discussions continued and eventually merged onto the exercise of the Warrants by the other Plaintiffs.

### F. Conditions Precedent

4

16. All conditions precedent necessary for Plaintiffs' recovery have occurred or have been performed.

## G. Breach of Contract

17. Paragraphs 1 through 16 are incorporated herein by reference.

18. Plaintiffs entered into (and/or were assignees of) valid written Warrant and Option agreements with Precis for the purchase of Precis stock at certain exercise prices. The assignments were on file with Precis. When Plaintiffs attempted to exercise their rights under the agreements, however, Defendants failed and refused to issue the Verification Letter within a reasonable time after the request from BMAS. Precis was aware of the volatile nature of its stock prices and that timely execution of the sale of the Warrants and Options was necessary in order for Plaintiffs to realize the value of their Warrants and Options. Indeed, during this same time frame, many of Precis employees were exercising their Warrants and Options and selling Precis stock. Precis' failure to timely provide the needed Verification Letter prevented Plaintiffs from exercising their Warrants and Options, and have damaged Plaintiffs well in excess of the jurisdictional limits of this Court. Defendants clearly knew what was required through the Verification Letter because the Defendants, in fact, issued one on July 18, 2002, which covered not only the 61,000 Warrants but also the 15,0000 Options owned by Plaintiff Kennedy.

## H. Breach of Duty of Good Faith and Fair Dealing

19. Paragraphs 1 through 16 are incorporated herein by reference.

20. The Warrant and Option agreements are governed by Oklahoma law. *See Public Serv. Co. of Oklahoma v. Burlington N. R.R. Co.*, 53 F.3d 1090, 1097 (10th Cir. 1995); *Bonner v. Oklahoma Rock Corp.*, 863 P.2d 1176, 1185 n.46 (Okla. 1993); *Panama Processes, S.A. v. Cities Serv. Co.*, 796 P.2d 276, 290 (Okla. 1990). Precis owed a duty of good faith and fair dealing to

5

Plaintiffs as required by Oklahoma law. *See Beshara v. Southern Nat. Bank,* 928 P.2d 280, 288 (Okla. 1996) Furthermore, under common law, all parties to a contract have a duty not to interfere with the other party's lawful exercise of their contractual rights. The issuance of a Verification Letter is a common practice in the securities business when exercising Options and Warrants. Precis knew that the value of its stock was rapidly declining and it knew that many of its employees were exercising their Warrants and Options and engaged in a significant sell off of Precis stock. Defendants acted with gross negligence or wanton disregard of Plaintiffs contractual rights by their six week delay in issuing the Verification Letter. Defendants were fully aware that unless the price of the stock was above the strike price, the Warrants and Options could not be exercised. The Options can not longer be exercised as their expiration date has been reached.

### I. Fraud in Stock Transaction – Section 27.01 of the Texas Business and Commerce Code

21.     Paragraphs 1 through 16 are incorporated herein by reference.

22.     The failure of the Defendants to timely respond to the request for the Verification Letter, coupled with the false and misleading statements made by Defendant May, constitute fraud in a stock transaction as that term is defined in §27.01 of the Texas Business and Commerce Code ("Code"). When entering into the Warrant and Option Agreements, it was represented, either directly or impliedly, that Precis would perform its duties thereunder and would not interfere with Plaintiffs' exercise of their rights. Plaintiffs would not have accepted the Warrant and Option Agreements but for this express and implied representation. Defendants' six week failure to respond to BMAS's request for a Verification Letter, coupled with the false and misleading statements of Defendant May, until after the stock price had fallen below the strike price constituted was an intentional act and/or an act in wanton disregard of Plaintiffs rights and

6

Appendix  054

as such violated the Code. Defendants' actual awareness may be inferred form Defendants conduct. As a result thereof, Plaintiffs are entitled to recover their damages as authorized by the Code.

### J. Negligent Misrepresentation

23.    Paragraphs 1 through 16 are incorporated herein by reference.

24.    Defendants negligently represented that Plaintiffs request for verification of the Warrants would be confirmed and the Verification Letter issued. Defendants intended Plaintiffs to rely on these misrepresentations, and, in fact, Plaintiffs did rely on these representations. Defendants, however, never intended to process Plaintiffs' verification request on a timely basis; or were so tardy in responding that it constituted no response at all.

25.    Defendants' misrepresentations created a cause of action for negligent misrepresentation.    The misrepresentations made by Defendants were in the course of Defendants' business, profession or employment, or in a transaction in which the Defendants had a pecuniary interest.    The misrepresentations were false and Defendants did not exercise reasonable care or competence in obtaining or communicating the information to Plaintiffs. Plaintiffs suffered damages when they justifiably relied on Defendants' misrepresentations.

### K. Common Law Fraud

26.    Paragraphs 1 through 16 are incorporated herein by reference.

27.    Defendants fraudulently represented that Plaintiffs request for verification of the Warrants would be confirmed and the Verification Letter issued. Defendants intended Plaintiffs to rely on these misrepresentations, and, in fact, Plaintiffs did rely on these representations. Defendants, however, never intended to process Plaintiffs' verification request on a timely basis; or were so tardy in responding that it constituted no response at all.

7

28.     The wrong done by Defendants was aggravated by the kind of fraud for which the law allows the imposition of exemplary damages, in that Defendants made material representations that were false, knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the representations be acted on by Plaintiffs. Plaintiffs relied on the representations and suffered injury as a result of this reliance. Plaintiffs, therefore, seek exemplary damages in addition to the other damages caused by Defendants.

### L. Negligence

29.     Paragraphs 1 through 16 are incorporated herein by reference.

30.     Defendants owed a duty to Plaintiffs to timely process their request for verification that Plaintiffs were authorized to exercise their Warrants and Options. Defendants breached this duty when they failed to issue the requested verification until after the Precis market price fell below the exercise price for the Warrants and Options. Defendants' breach of their duty proximately caused Plaintiffs damages well in excess of the jurisdictional limits of this Court.

### M. Legal Malpractice

31.     All conditions precedent necessary for Plaintiffs' recovery have occurred or have been performed.

32.     Defendant May is an attorney and in his capacity as an attorney gave advise and guidance to Plaintiffs on matters which they had an economic interest by stating that he was "looking into the matter" and would "get back to them"; when, in fact, he did not do either, and only responded after the stock price had fallen below the strike prices. Defendant May's commitment to look into the matter and to get back to the Plaintiffs was a commitment made by

8

Defendant May in his capacity as an attorney, separate and apart from his duties as an officer of Precis.

## N. Damages

33.    For each act described above, each individual Plaintiff has suffered actual damages in an amount of equal to the number of Warrants and/or Options held by such plaintiff multiplied by the difference between the market value of the stock on or about May 7, 2002 and the strike price of such Warrant and/or Option. Furthermore, because the actions of Defendants were fraudulent, intentional, performed in wonton negligence or reckless disregard of Plaintiffs' rights, Plaintiffs are entitled to recover Exemplary Damages under §41.001 *et. esq.* of the Texas Civil Practice and Remedies Code. Each Plaintiff's actual and exemplary damages exceed the minimal jurisdictional limits of this Court.

## O. Jury Demand

34. Defendants hereby request that the above-styled lawsuit be heard by a jury and pay the jury fee herewith.

## P. Attorneys' Fees

35.    Paragraphs 1 through 27 are incorporated herein by reference.

36.    Plaintiffs sue to recover their reasonable attorney's fees and court costs in prosecuting this action against Defendants.

## Q. Prayer for Relief

FOR THESE REASONS, Plaintiffs U.S. Asian Capital Advisors, LLC, Eugene M. Kennedy, P.A., Stewart & Associates, and Kimberly DeCamp request that Defendants Precis,

Inc. and David May be cited to appear and answer herein and Plaintiffs request the following relief:

    (a)    actual damages be awarded to each Plaintiff based upon his/her agreements with

            Precis in an amount in excess of the jurisdictional limits of this Court;

    (b)    exemplary damages;

    (c)    costs and reasonable attorney's fees;

    (d)    pre- and post-judgment interest; and

    (e)    any and all further relief to which Plaintiffs may be entitled.


Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & MARTIN, P.C.


BY: _____
John H. Glover
State Bar No. 08038500
Matthew G. Zagrodzky
State Bar No. 24003228
1200 Smith Street, Suite 1400
Houston, Texas 77002- 4310
(713) 658-1813
(713) 658-2553 (FACSIMILE)

10

SHRULL ALTMAN LLP

BY: _____

Dan Altman
State Bar No. 00793255
1701 River Run, Suite 1116
Fort Worth, Texas 76107
(817) 336-3925
(817) 336-2124 FACSIMILE

ATTORNEYS FOR PLAINTIFFS ROBERT KIRK
INDIVIDUALLY AND D/B/A US ASIAN CAPITAL
ADVISORS, LLC, EUGENE M. KENNEDY, P.A.,
STEWART & ASSOCIATES, AND KIMBERLY
DECAMP

0431252.01
003606-000000

11



ER # 7371c
Steve Baile

## PALMER & CAY
*Established 1868*

Insurance Agents & Brokers • Employee Benefit Consultants
3348 Peachtree Road, NE • Suite 1400 (30326) • P.O. Box 52427 • Atlanta, GA 30355-0427
Telephone (404) 231-9595 • Fax (404) 231-9585

CHUBB GROU

# FACSIMILE TRANSMISSION COVER SHEET

CLAIMS/DALLAS (

DATE: _09/26/03_

TOTAL PAGES: _24_
(INCLUDING COVER PAGE)

FACSIMILE NUMBER: _214.754.8570_

ATTENTION: _CLAIMS DEPT_

COMPANY: _Chubb Group of Insurance Co_

SUBJECT: _NEW LOSS_

FROM: _PALMER & CAY_

MESSAGE:

SENT BY: _____
DATE: _____
TIME: _____

Member of
Assurex International Insurance Brokers With Over 90 Offices Worldwide

09/26/03 FRI 08:32 [TX/RX NO 7722] @001

Appendix 060



## PALMER & CAY
*Established 1868*

Risk Management ▪ Insurance ▪ Compensation & Benefits

3348 Peachtree Road NE, Suite 1400 (30326) ▪ P.O. Box 52427 ▪ Atlanta, GA 30355 ▪ 404 . 231 . 9595 ▪ Fax 404 . 231 . 9585 ▪ palmercay.com

TO: *PM* Jim Danford *214/754 9524*     Fax #: 214/754-8558
*214. 754. 0777*        Chubb Group of Ins. Co. - Dallas Claims

FROM:     Susan L. Weckerling, ARM
          Assistant Vice President

DATE:     ~~August 28, 2003~~ *Sept. 24, 2003*

RE:       Insured:        Precis, Inc.
          Policy No.:     8168 50 14 (D&O)
          Style of case:  Robert Kirk, et al v. Precis, Inc. & David May

Dear Jim:

Please find the attached documents as notice of claim under the Executive Protection program subject to a $150,000 deductible (securities-related claim). Precis will be choosing counsel subject to the approved panel. They would appreciate input as to whether separate counsel should be retained for David May.

This claim involves the timing for exercising stock warrants and options. The plaintiffs allege that they were misled and never received a Verification letter timely. This resulted in a large financial loss to these individuals. We would appreciate your reviewing the attached and advising as to your coverage position ASAP.

w/encl.

cc:   Karen Robb, Precis
      Kim Pickle, P&C

*9/24 - Sent to Chubb (214/754-8524)*
*& AXIS (678-746-9400)*





# CHUBB GROUP OF INSURANCE COMPANIES

**CHUBB**

2001 Bryan Street, Suite 3400, Dallas, TX 75201-3068 • Phone: (214) 754-0777

April 22, 2004

Karen Robb
Precis, Inc.
2040 N. Highway 360
Grand Prairie, TX 75050

REF: Policy Number: 8168 5014
     Insured: Precis, Inc.
     Litigation: *Robert Kirk, et al. vs Precis, Inc. and David May*
     Company: Federal Insurance Company

Dear Ms. Robb:

On behalf of Federal Insurance Company ("Federal") this will acknowledge receipt of the above noted suit which was served on Sept. 10, 2003. However, in its investigation of this matter Federal has been provided with copies of letters dated Dec. 2, 2002 and Dec. 9, 2002 which were authored by Eugene Kennedy and Robert Kirk respectively and who are the plaintiffs in the above noted litigation.

Mr. Kennedy's letter of Dec. 2, 2002 was addressed to David May who is a defendant in the litigation and Mr. Kirk's letter of Dec. 9, 2002 is addressed to Judith Henkels who we understand to be the CEO of Precis, Inc. Additionally, we were provided with a copy of the Jan. 11, 2003 letter of attorney Michael Dunn, which was written in response to the two letters sent to Precis by Mr. Kennedy and Mr. May. Both of those letters contain demands for monetary damages from Precis based on Precis' alleged failure to allow those parties to exercise the sale of their Stock Warrants.

Accordingly, those Claims should have been reported to Federal under the Policy Period effective Sept. 1, 2002 to Sept. 1, 2003. Under the Reporting and Notice Provisions of that Policy it provides that the Insureds shall, as a condition precedent to exercising their rights under the coverage section, give to the Company written notice as soon as practicable of any Claim made against any of them for a Wrongful Act. The definition of Claim under the policy includes a written demand for monetary damages.

Please note that the letters of Dec. 2, 2002 and Dec. 9, 2002 were not provided to Federal until Feb. 27, 2004 and were only provided to Federal after it and Zurich had demanded copies of any

Appendix 062

April 22, 2004
Page 2

correspondence, which may have preceded the filing of the litigation which was served on Sept. 10, 2003. Additionally, an application for coverage was completed by the CFO of Precis for the Policy Period commencing Sept. 1, 2003 to Sept. 1, 2004. The application is dated June 8, 2003.

Item 14 of that application is a Prior Knowledge/Warranty statement which states: "No person proposed for coverage is aware of any facts or circumstances which he or she has reason to suppose might give rise to a future claim that would fall within the scope of the proposed coverage, except: (If no exceptions, please state)." The CFO of Precis answered that question by writing in the letters N/A.

It is Federal's position that the Claims of Mr. Kennedy and Mr. Kirk were not reported to us as soon as practicable as required in the policy. A period of one year and two months elapsed between the time the letters were received by Precis and the time they were turned over to us by Precis' defense attorney. Further, Precis was given the opportunity to advise Federal of those Claims in the application for coverage completed by the CFO of Precis on June 8, 2003 but it did not do so.

Based upon the Policy violations noted above, Federal must respectfully deny coverage for this matter. Further, we continue to reserve all rights under the Policy and available at law.

Respectfully,

J. Steve Bailey
Assistant Vice President
Directors and Officers Litigation

JSB/.mg

cc:   Kim Pickle
      Palmer & Cay
      P.O. Box 52427
      Atlanta, GA 30355

      Roger Cowie, Esq.
      Locke Liddell & Sapp
      2200 Ross Avenue
      Suite 2200
      Dallas, TX 75201-6776

I

# Hanson
# Peters
# Nye

Attorneys at Law

1301 South Grove Avenue
Suite 200
Barrington, Illinois 60010
Phone: (847) 277-9988
Fax: (847) 277-7339

**Anastasia Markakis Nye**
847-277-8103 direct dial
natashanye@hpnlaw.com

March 23, 2004

## VIA FACSIMILE AND CERTIFIED MAIL

Ms. Karen Robb
Precis, Inc.
2040 N. Highway 360
Grand Prairie, TX  75050

|  |  |  |
|---|---|---|
| Re: | Insured: | **Precis, Inc.** |
|  | Claimant: | **Robert Kirk, et al.** |
|  | Policy No.: | **DOC 9376228 00** |
|  | Our File No.: | **671013** |

Dear Ms. Robb:

As you know from our previous correspondence, we represent Zurich American Insurance Company ("Zurich") in connection with the investigation and analysis of coverage for the above-referenced matter.  In that capacity, we have received and reviewed the correspondence recently provided to us by Mr. Roger Cowie of Locke Liddell & Sapp and are now writing to provide you with the coverage implications of that correspondence to this matter.

As you know, Zurich issued a Directors and Officers Liability and Reimbursement Policy (Policy No. DOC 9376228 00) to Precis for the Policy Period of September 1, 2003 to September 1, 2004 (the "Policy").  The Policy provides a Limit of Liability of $5 million for each Loss during the Policy Period subject to the terms of the Policy and the applicable retention.

We recently received copies of two letters that materially affect coverage available under the Policy.  The first letter is dated December 2, 2002 and is from plaintiff Eugene Kennedy to David May (the "December 2nd letter").  The second letter is dated December 9, 2002 and is from plaintiff Robert Kirk to Judith Henkels (the "December 9th letter").  We note that these letters were both written long before the Zurich Policy inception date.

Ms. Karen Robb
Precis, Inc.
March 23, 2004
Page 2


In view of the contents and timing of the December 2nd and 9th letters, coverage under the Policy is not available for the subsequently filed lawsuit styled <u>Robert Kirk, et al. v. Precis, Inc. and David May</u> (the "Kirk Lawsuit"). As we have previously noted, the Policy definition of Claim, as set forth by Section III.A., reads, in part, as follows:

> **Claim** means:
>
> (1) a written demand for monetary damages, [or]
> (2) a civil proceeding commenced by the service of a complaint or similar pleading . . .
> against any **Insured Person** for a **Wrongful Act**, including any appeal therefrom.

The December 2nd and 9th letters constitute Claims because they each contain a demand for monetary damages.

The December 2nd letter contains the following demand: "I want consideration and adjustment in the circumstances. I would suggest payment to me by the Company in the amount of $5 per Warrant in exchange for surrender of my Common Stock Purchase Warrants." Mr. Kennedy repeats this demand throughout the letter.

In the December 9th letter, Mr. Kirk states that he is seeking "reparation of this matter." He further states that the "damages, pre-interest, exceed $1.5 Million . . ." and that he views Judith Henkels, David May and Precis as responsible and "sharing liability for this damage." The plaintiff ends the letter by threatening the commencement of litigation "to seek a proper resolution."[1]

Because the December 2nd and 9th letters each contain a demand for monetary damages, they each constitute a Claim, as defined by Section III.A. of the Policy. The Kirk Lawsuit is the same Claim initiated by the demand letters dated December 2, and 9, 2002. Because the Policy provides that coverage is available only for a Claim that is first made during the Policy Period, coverage under the Policy is not available for the Kirk Lawsuit, since it was not first made during the Policy Period. Accordingly, we believe this matter implicates the prior policy period. We refer you to an e-mail from J. Steve Bailey of Chubb dated October 13, 2003 in which he states that Chubb "needs to determine if the insured received 'a written demand for monetary damages' before the suit was filed." Zurich believes the December 2nd and 9th letters constitute a written demand for monetary damages. We understand these letters have been submitted to Chubb for its review.

---

[1] We note that in Gene Kennedy's e-mail dated December 12, 2002, to Mike Dunn, he threatens compiling a class of plaintiffs.

**Hanson
Peters
Nye**

Ms. Karen Robb
Precis, Inc.
March 23, 2004
Page 3

Based on the foregoing, we do not believe coverage is available for the Kirk Lawsuit under the Zurich Policy. We would be happy to review any information you may have which may impact on Zurich's coverage position.

This correspondence is not meant to be an exhaustive recitation of those Policy provisions that may serve to further limit or preclude coverage of this matter. Zurich reserves all of its other rights, remedies and defenses in connection with this matter.

Should you have any questions or would like to discuss this matter further, please do not hesitate to contact us. We would be glad to discuss this matter with you at any time.

Very truly yours,

Anastasia Markakis Nye

cc:    Ms. Farah Nawaz-Zafar (via e-mail)
       Zurich American Insurance Company

       Mr. Roger B. Cowie (via e-mail)
       Locke Liddell & Sapp

       Mr. Fred Buck (via e-mail)
       Wood & Company

       Ms. Deborah Levy (via e-mail)
       Palmer& Cay LLP

**Hanson
Peters
Nye**

J

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

PRECIS, INC., an Oklahoma corporation, )
and David May, )
                                         )
      Plaintiffs, )
                                          )
v.                                    )   Case No. **CJ.-2004-6150**
                                          )
FEDERAL INSURANCE COMPANY, )
an Indiana stock insurance company, and )
ZURICH AMERICAN INSURANCE )
COMPANY, )
                                          )
      Defendants. )

**FILED IN THE DISTRICT COURT
OKLAHOMA COUNTY, OKLA.**

**JUL 2 8 2004**

**PATRICIA PRESLEY, COURT CLERK**
by _____
                  **Deputy**

**PETITION**

      Plaintiffs, Precis, Inc., an Oklahoma corporation ("Precis"), and David May, state as

follows for their Petition against the defendants, Federal Insurance Company, an Indiana stock

insurance company ("Federal"), and Zurich American Insurance company ("Zurich").

      1.      Federal issued Precis an Executive Protection Policy of insurance (the "Federal

Policy") under which Federal agreed to cover certain losses attributable to certain claims asserted

by third parties against Precis, its officers and/or directors, including May, between 12:01 a.m.

on September 1, 2002, and 12:01 a.m. on September 1, 2003.

      2.      Zurich issued Precis a Directors and Officers Liability and Reimbursement Policy

of insurance (the "Zurich Policy") under which Zurich agreed to cover certain losses attributable

to certain claims asserted by third parties against Precis, its officers and/or directors, including

May, between 12:01 a.m. on September 1, 2003, and 12:01 a.m. on September 1, 2004.

3.      On August 29, 2003, Robert Kirk, et al. filed an action against Precis and May in the District Court of Tarrant County Texas, Cause No. 236-201468-03 (the "Lawsuit"), asserting a claim of the type covered by the Federal Policy and the Zurich Policy.

4.      The Original Petition in the Lawsuit was served on Precis and May on September 10, 2003.

5.      Precis and May promptly notified Federal and Zurich of the Lawsuit and requested coverage under the Federal Policy and the Zurich Policy; both defendants denied coverage.

6.      Precis and May are entitled to coverage with respect to certain losses relating to the Lawsuit under the Federal Policy and/or the Zurich Policy.

7.      There is an actual controversy concerning plaintiffs' rights against defendants under the Federal Policy and the Zurich Policy.

WHEREFORE, plaintiffs pray for:

a.      declaratory judgment against defendants concerning plaintiffs' rights to coverage under the Federal Policy and the Zurich Policy;

b.      judgment for any coverage to which defendants may be entitled at the time of, and in accordance with, said declaratory judgment;

c.      costs including attorneys' fees; and

d.      all other relief to which plaintiffs may be entitled.

DATED this 28ᵀᴴ day of  July  , 2004.

_signature_

Reid E. Robison (OBA # 7692)
Drew D. Webb (OBA #11560)

1449101_1.DOC

2

Appendix 068

McAFEE & TAFT
A Professional Corporation
10th Floor, Two Leadership Square
Oklahoma City, Oklahoma  73102
Telephone:     (405) 235-9621
Facsimile:     (405) 235-0439

ATTORNEYS FOR PLAINTIFFS

Appendix  069

K

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PRECIS, INC., an Oklahoma corporation, and DAVID MAY, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. CIV-04-1166-M |
| FEDERAL INSURANCE COMPANY, an Indiana stock insurance company, and ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

### ORDER

Pending before the Court is defendant Federal Insurance Company's ("Federal") Amended

Motion to Transfer Venue ("Motion to Transfer"). The Motion has been fully briefed and is now

ripe for determination. For the reasons that follow, the Motion will be granted.

I.    Background

This action centers around two directors and officers liability insurance policies (the

"Policies"). Both Policies were issued to plaintiff Precis, Inc. ("Precis"), the first by Federal and

the second by defendant Zurich American Insurance Company ("Zurich"). Plaintiff David May

("May"), Precis's CEO, is among the individuals insured under the Policies.

Precis and May were sued in the District Court of Tarrant County, State of Texas, in August

of 2003. Both requested coverage under the Policies. For reasons that need not be explained at this

time, Federal and Zurich separately denied coverage.

On July 28, 2004, Precis and May instituted this action in the District Court of Oklahoma

County, State of Oklahoma, seeking, among other things, a declaratory judgment "concerning

plaintiffs' rights to coverage under the Federal Policy and the Zurich Policy." Pet. at ¶ 7(a). Federal

and Zurich timely removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Now, Federal moves the Court under 28 U.S.C. § 1404(a) to transfer the action to the United States

District Court for the Northern District of Texas (the "Transferee District").

II.     Discussion

Congress enacted 28 U.S.C. § 1404(a) "as a 'federal housekeeping measure,' allowing easy

change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254

(1981) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 636 (1964)).  The statute provides: "For the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

"The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing

that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d

1509, 1515 (10th Cir. 1991).  When assessing whether the moving party has met its burden, district

courts are required to examine, on a case-by-case basis, several factors bearing on considerations

of convenience and fairness.  *Id.* at 1516.  The three primary factors, all of which are specifically

listed in the statute, include: (1) the convenience of the parties; (2) the convenience of the witnesses;

and (3) the interest of justice.  28 U.S.C. § 1404(a).  In addition to these three factors, district courts

should consider:

> the plaintiff's choice of forum; the accessibility of witnesses and
> other sources of proof, including the availability of compulsory
> process to insure attendance of witnesses; the cost of making the
> necessary proof; questions as to the enforceability of a judgment if
> one is obtained; relative advantages and obstacles to a fair trial;
> difficulties that may arise from congested dockets; the possibility of
> the existence of questions arising in the area of conflict of laws; the
> advantage of having a local court determine questions of local law;
> and, all other considerations of a practical nature that make a trial
> easy, expeditious and economical.

2

*Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).

    A.    Propriety of Venue in the Northern District of Texas

        Before addressing the above-listed factors, the Court must first determine whether this action "might have been brought" in the Transferee District. *See* 28 U.S.C. § 1404(a). Where, as here, "jurisdiction is founded only on diversity of citizenship," venue is governed by 28 U.S.C. § 1391(a). That section provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

        Federal asserts that venue is proper in the Transferee District because "a substantial part of the events or omissions giving rise to the claim occurred" there. Plaintiffs do not dispute this contention, arguing only that the Western District of Oklahoma is the more convenient venue.

        Having carefully reviewed the parties' submissions, the Court finds that "a substantial part of the events or omissions giving rise to the claim occurred" in the Transferee District. In this regard, the Court first notes that the lawsuit precipitating the instant coverage dispute was filed in Tarrant County, Texas, which is located within the Transferee District. Second, the Court notes that according to the Federal and Zurich Policies, Precis resides in Grand Prairie, Texas, which is located in Dallas County, in the Transferee District. *See* Exs. 1, 2 to Resp. to Mot. to Transfer. Third, the Court notes that both Federal and Zurich's letters denying plaintiffs' coverage requests were mailed

3

**Appendix  072**

to Precis's Grand Prairie, Texas address.  *See* Exs. 1-H, 1-I to Mot. to Transfer.  One may reasonably conclude, then, that the requests for coverage, which clearly originated in the Transferee District, were also denied in that district.  From these facts, the Court finds that venue is proper in the Transferee District under § 1391(a), and correspondingly finds, therefore, that this action "might have been brought" in that district within the meaning of § 1404(a).

> B.     Factors Bearing on the Decision to Transfer

> 1.     Plaintiffs' Choice of Forum

Because this action "might have been brought" in the Transferee District, the Court may proceed to consider whether the action should be transferred to that district under § 1404(a).  The Court begins by considering plaintiffs' choice of forum.  The Tenth Circuit has made clear that "[u]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972).  This general rule, however, is subject to exceptions.  If, for example, the events or transactions giving rise to the plaintiff's claims did not occur in or are otherwise unrelated to the plaintiff's chosen forum, the deference ordinarily accorded the plaintiff's choice is substantially reduced.  *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1263 (D. Kan. 2004); *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Ca. 2002); *Hoppe v. G.D. Searle & Co.*, 683 F. Supp. 1271, 1276 (D. Minn. 1988); *Jacobs v. Lancaster*, 526 F. Supp. 767, 769 (W.D. Okla. 1981); *Weinberger v. Retail Credit Co.*, 345 F. Supp. 165, 168 (E.D. Pa. 1972).

4

Stating that the only links between Oklahoma and the facts of this case are that Precis was incorporated in Oklahoma and that Precis had its principal place of business in Oklahoma *before* plaintiffs were sued in Texas state court, Federal asserts that the above-referenced exception should apply in the instant action. Plaintiffs, on the other hand, maintain that the exception is inapplicable in light of the significant contacts between the State of Oklahoma and the facts underlying the case at bar. Specifically, they emphasize that "the original insurance policy upon which this dispute is based was entered into in Oklahoma, at a time when Oklahoma was the home of Precis. In addition, the original Federal policy was issued on an Oklahoma insurance policy form." Resp. to Mot. to Transfer at 4.

Upon review of the parties' submissions, the Court finds that there exists no substantial connection between this action and the State of Oklahoma. Both plaintiffs' Petition and plaintiffs' response to the Motion to Transfer confirm that the only insurance policies relevant to this coverage dispute are the Federal and Zurich Policies. As indicated in Part II.A., *supra*, Texas is the only state that has been identified as having any connection to either of these Policies. Plaintiffs have identified no reason why the "original insurance policy," which presumably preceded the Federal Policy in time, should be given any consideration whatsoever. The "original" policy is not referenced in plaintiffs' Petition, and to the extent that it relates to the Federal Policy at all, the significance of that relationship is negligible because the Federal Policy expressly provides that all insurance policies that Federal previously issued to Precis are terminated. Ex. 1-B to Mot. to Transfer at 5, ¶ 12. The Court, accordingly, finds that any facts pertaining to the "original insurance policy" are irrelevant for purposes of deciding whether this action should be transferred. Apart from the fact that Precis was incorporated in Oklahoma, the only connections that plaintiffs have

5

identified between the instant action and the State of Oklahoma pertain to the "original insurance policy." Because Precis's incorporation in Oklahoma is only marginally relevant to the events and transactions at issue in this action, the Court finds that plaintiffs' choice of venue should be accorded minimal deference. *See, e.g., Pac. Car & Foundry Co.*, 403 F.2d at 954.

2.    Convenience of the Parties

Federal asserts the Transferee District is a more convenient venue for the parties than is the Western District of Oklahoma. In support of that assertion, Federal has presented evidence that both plaintiffs reside in the Transferee District, that Federal's handling of plaintiffs' request for coverage was conducted in Dallas, in the Transferee District, and that documentary evidence relevant to Federal's handling of plaintiffs' request for coverage is located in the Transferee District. In response, plaintiffs assert that the Western District of Oklahoma is the more convenient venue for the parties because "Federal does a considerable amount of business in Oklahoma" and "[t]he individuals involved in issuing the original policy, which was entered into in Oklahoma, are believed to be living in Oklahoma." Resp. to Mot. to Transfer at 6.

Having reviewed the parties' submissions, the Court finds that the convenience of the parties weighs in favor of Federal's requested transfer. Specifically, the Court finds the fact that plaintiffs reside in the Transferee District, the fact that Federal reviewed and ultimately denied plaintiffs' request for coverage in the Transferee District, and the fact that documentary evidence related to Federal's claim handling is located in the Transferee District, all support a transfer. The Court further finds that neither plaintiffs' reference to the amount of business that Federal conducts in Oklahoma nor the residence of individuals "involved in issuing the original policy" supports plaintiffs' assertion that the Western District of Oklahoma is more convenient for the parties.

6

Finally, the Court observes that although neither Federal nor plaintiffs have addressed the issue of convenience as to Zurich, Zurich has raised the defense of improper venue in its Answer to plaintiffs' Petition, Zurich Answer at ¶ 9, and Zurich has not objected to Federal's requested transfer. Accordingly, for the reasons set forth above, the Court concludes that the Transferee District is the more convenient venue for the parties.

### 3. Convenience of the Witnesses

Federal next asserts the Transferee District is a more convenient venue for the witnesses than is the Western District of Oklahoma. In support of this assertion, Federal has presented evidence that the three individuals most likely to be called as witnesses in this action, May, Karen Robb, a legal assistant who works for Precis, and J. Steve Bailey, the Federal representative responsible for handling plaintiffs' request for coverage, all live and work in the Transferee District. Plaintiffs do not dispute that these three individuals reside in the Transferee District; instead, they merely argue that witness testimony should be unnecessary in this case.

Having reviewed the parties' submissions, the Court finds the convenience of the witnesses weighs in favor of Federal's requested transfer. At this very early stage of the litigation, the Court is unable to conclusively determine whether and to what extent witness participation will play a role in the outcome of this case. If witness participation proves *un*necessary, neither the Transferee District nor the Western District of Oklahoma will be the more convenient venue. If, however, witness participation does prove necessary, it is clear that the Transferee District will be the more convenient venue, as the only individuals identified as potential witnesses live and work in that district.

7

4.     Interest of Justice

Finally, Federal asserts the interest of justice favors the transfer of this action to the Transferee District. The term "interest of justice" is inherently vague, and it is for this reason that the term has been interpreted as a congressional conferral of broad discretion on district courts to consider any number of factors when deciding whether a case should be transferred under § 1404(a). *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999). The Court, therefore, will consider the remaining factors listed above (*e.g.,* "the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical," *Ritter*, 371 F.2d at 147), at least to the extent that they were addressed by the parties, under the "interest of justice" heading. *See Watkins v. Crescent Enters., LLC*, 314 F. Supp. 2d 1156, 1161 (N.D. Okla. 2004) (citing *Jacobs*, 526 F. Supp. at 770).

a.     *Accessibility of Witnesses and Other Sources of Proof; Cost of Making the Necessary Proof*

Federal contends the accessibility of witnesses and other sources of proof and the cost of making the necessary proof weigh in favor of transfer, emphasizing again that to the extent witness testimony and documentary evidence will be necessary in this action, as Federal believes they will, such sources of proof are located exclusively in the Transferee District. Plaintiffs again discount the need for witness testimony and documentary evidence, arguing that the "sources of proof and

8

witnesses emphasized by Federal are not relevant to this case." Resp. to Mot. to Transfer at 8. The Court finds, for the reasons set forth above in connection with the convenience of the parties and convenience of the witnesses factors, that the accessibility of witnesses and other sources of proof and the cost of making the necessary proof weigh in favor of Federal's requested transfer.

> b.   *Availability of Compulsory Process*

Federal concedes it is aware of no unwilling, non-party witnesses, but nevertheless argues that if it becomes necessary for any such witnesses to participate in the litigation, it is most likely that the witnesses will reside in the Transferee District. Plaintiffs argue that because it is unlikely that any unwilling, non-party witnesses will participate, "this factor weighs heavily in favor of Precis in denying transfer." Resp. to Mot. to Transfer at 9. Based upon the parties' submissions, the Court finds that the "availability of compulsory process" factor is irrelevant under the facts of this case, and that it weighs neither in favor of nor against the requested transfer.

> c.   *Local Law**

Federal asserts that Texas law should govern the parties' dispute, and therefore argues that a Texas court would be better equipped to hear the case. Not surprisingly, plaintiffs assert that Oklahoma law should govern, and therefore argue that an Oklahoma court would be better equipped to hear the case.

Before proceeding further, the Court notes that regardless of whether this action remains in this district or is transferred to any other district, Oklahoma's choice-of-law rules will apply. *Piper*, 454 U.S. at 243 n.8 ("Under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 . . ., a court ordinarily

---

\*   The only remaining factor addressed by the parties in any detail is the advantage of having a local court determine questions of local law.

must apply the choice-of-law rules of the State in which it sits. However, where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred."). Oklahoma law provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. tit. 15, § 162. Federal contends the Policies were "made" in Texas because that is the location of Precis's principal place of business, which is also presumably the place where the contract negotiation occurred. Federal also contends the Policies were to be "performed" in Texas because plaintiffs requested coverage under the Policies in connection with a civil action commenced in Texas state court. Plaintiffs contend the Policies were "made" in Oklahoma because the "original" policy was entered into in Oklahoma pursuant to Oklahoma law.

The Court declines to expressly determine whether Texas law, Oklahoma law, or any other state's law should apply to the parties' coverage dispute. The Court nevertheless finds that under Oklahoma's choice-of-law statute, it appears *more likely* that Texas law will apply than it does that Oklahoma law will apply. Specifically, the Court finds that one may reasonably argue, as Federal does, that the Policies were "made" in Texas because that is the location of Precis's principal place of business. The Court is not persuaded that the Policies were intended to be "performed" in Texas simply because one particular lawsuit – the lawsuit that prompted plaintiffs to request coverage in this case – happened to have been filed in that state. Both Policies authorize coverage "anywhere in the world." Federal Policy, Ex. 1-B to Mot. to Transfer at 3, ¶ 1; Zurich Policy, Ex. 2 to Resp. to Mot. to Transfer at 7, Subsection G. Neither, however, references Texas law. Because Texas is not specifically designated as the place of performance, the Court finds the Policies were not

10

intended to be performed in Texas within the meaning of Oklahoma's choice-of-law statute. *See*

*Rhody v. State Farm Mut. Ins. Co.*, 771 F.2d 1416, 1420 (10th Cir. 1985) ("We believe the language

of Okla. Stat. tit. 15, § 162 (1971), compels a reading which restricts application of the law of the

place of performance of a contract to cases in which the *place of performance is indicated in the*

*contract*.") (emphasis in original). Finally, as discussed above, the "original" policy is not relevant

to this coverage dispute; because the "original" policy is the only basis for plaintiffs' assertion that

Oklahoma law should apply to the parties' coverage dispute, the Court finds no persuasive reason

to conclude that Oklahoma law should in fact apply. Therefore, the Court finds that the advantage

of having a local court determine questions of local law weighs in favor of Federal's requested

transfer.

The Court concludes that on balance, the various factors considered under the "interest of

justice" heading weigh in favor of transfer.

III.    Conclusion

Having carefully reviewed the parties' submissions, the Court finds that all three of the

primary factors bearing on the propriety of a transfer of venue under § 1404(a) (*e.g.,* the convenience

of the parties, the convenience of the witnesses, and the interest of justice) weigh in favor of a

transfer of this action. The only factor that does not weigh in favor of a transfer is plaintiffs' choice

of forum, which, as explained above, is entitled to minimal deference given the absence of any

significant contacts between Oklahoma and the facts of this case. In sum, then, the Court finds that

Federal has met its burden of establishing that the present forum, the Western District of Oklahoma,

is inconvenient, that the Transferee District, the Northern District of Texas, is a proper and more

convenient forum and, therefore, that this action should be transferred to the Northern District of

11

Texas pursuant to § 1404(a).  For all of the foregoing reasons, the Court hereby GRANTS Federal's Amended Motion to Transfer Venue [docket no. 19] and TRANSFERS this action to the United States District Court for the Northern District of Texas.  The Clerk of this Court shall take all necessary steps to effectuate the transfer forthwith.  Federal's initial Motion to Transfer Venue [docket no. 5] is DENIED as moot.

**IT IS SO ORDERED this 14th day of February, 2005.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

12

**Appendix 081**